1  JOHN B. SULLIVAN (State Bar No. 96742)
   jbs@severson.com
2  MARK D. LONERGAN (State Bar No. 143622)
   mdl@severson.com
3  ERIK KEMP (State Bar No. 246196)
   ek@severson.com
4  LASZLO LADI (State Bar No. 265564)
   ll@severson.com
5  SEVERSON & WERSON
   A Professional Corporation
6  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
7  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
8
   Attorneys for Defendants
9  NATIONSTAR MORTGAGE LLC and
   VERIPRO SOLUTIONS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUELIA WASHINGTON TOLAND and GEORGIA TOLAND, individually and on behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; VERIPRO SOLUTIONS INC., a Delaware corporation; and DOES 1 through 20,<br><br>Defendants. | Case No. 3:17-cv-02575-JD<br><br>**NOTICE OF MOTION AND DEFENDANTS' MOTION TO EXCLUDE OR LIMIT THE REPORT, OPINIONS, AND TESTIMONY OF EVAN HENDRICKS**<br><br>Date: August 13, 2020<br>Time: 10:00 a.m.<br>Ctrm.: 11<br>Judge: Hon. James Donato<br><br>Action Filed: March 24, 2017 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 13, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard, in courtroom 11, 19th floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendants Nationstar Mortgage LLC and Veripro Solutions, Inc. will and hereby does move to exclude or limit the expert report, opinions, and testimony of Evan Hendricks, who has been designated as expert by plaintiffs Georgia Toland and Taquelia Washington-Toland.

This motion is brought under Federal Rules of Evidence Rule 702 and 703 on the grounds that Hendricks lacks the knowledge, skill, experience, training, or education relevant to the subject matter of his report necessary to formulate an opinion, that Hendricks' opinions are unreliable and unsupported, and that Hendricks' opinions will not help the trier of fact to understand the evidence or to determine a fact in issue.

The motion is based on this notice, the accompanying memorandum of points and authorities, the declaration of Erik Kemp and the exhibits thereto, all other pleadings and records on file in this case, and upon such argument as the Court may consider at the hearing on this matter.

DATED: April 20, 2020

SEVERSON & WERSON
A Professional Corporation

By: */s/ Erik Kemp*
Erik Kemp

Attorneys for Defendants NATIONSTAR MORTGAGE LLC and VERIPRO SOLUTIONS INC.

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 6

I. INTRODUCTION ................................................................................................................... 6

II. BACKGROUND FACTS ....................................................................................................... 7

III. GOVERNING STANDARDS ............................................................................................... 8

IV. ARGUMENT ......................................................................................................................... 9

      A.     Hendricks Lacks Sufficient Expertise to Qualify. ...................................... 9

      B.     Hendricks' Opinions Are Not Reliable. .................................................... 12

      C.     Hendricks' Opinions Would Confuse the Jury. ....................................... 15

V. CONCLUSION ..................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Equifax Info. Servs., LLC*,
   2018 U.S. Dist. LEXIS 52939 (D. Kan. March 29, 2018) ..................................... 10, 11, 16

*Apodaca v. Discover Financial Services, et. al.*
   417 F.Supp.2d 1220 (D. N.M. 2006) .............................................................................. 10

*Brown v. Vivint Solar, Inc.*,
   2020 U.S. Dist. LEXIS 52590 (M.D. Fla. March 26, 2020) .......................................... 11, 15

*Cramer v. Equifax Info. Servs.*,
   2019 U.S. Dist. LEXIS 161062 (E.D. Mo. September 18, 2019) .................................. 10, 15

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................. 8, 9, 12

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................................ 8, 12

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010) .............................................................................. 9

*Haines v. Honolulu Shipyard, Inc.*,
   125 F.Supp.2d 1020 (D. Hawaii 2000) ........................................................................... 14

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ................................................ 12

*Kuns v. Ocwen Loan Servicing, LLC*,
   611 Fed.Appx. 398 (9th Cir. 2015) ................................................................................. 15

*Malverty v. Equifax Info. Servs., LLC*,
   2019 U.S. Dist. LEXIS 186082 (M.D. Fla. October 28, 2019) ..................................... 10, 11

*McDonough v. JPMorgan Chase Bank, N.A.*,
   2016 U.S. Dist. LEXIS 126755, *6-7 (E.D. Mo. September 16, 2016) ......................... 10, 11

*Rigas v. Allstate Ins. Co.*,
   1998 WL 422671 (C.D. Cal. Apr. 16, 1998) .................................................................... 14

*Robertson v. Norton Co.*,
   148 F.3d 905 (8th Cir. 1998) .......................................................................................... 15

*Sandigo v. Ocwen Loan Servicing, LLC*,
    2019 U.S. Dist. LEXIS 105412 (N.D. Cal. June 24, 2019) ............................................ 11, 15

*Shaw v. Experian Info. Solutions, Inc.*,
    2016 U.S.Dist.LEXIS 134991 (S.D.Cal. Sep. 28, 2016) ..................................................... 10

*Sloane v. Equifax Information Services, Inc.*,
    2006 WL 5376431 (E.D.Va. 2006) ....................................................................................... 10

*Thomas v. TransUnion*,
    2002 WL 34369445 (D.Or. 2002) ......................................................................................... 10

*United States v. Brown*,
    415 F.3d 1257 (11th Cir. 2005) ................................................................................................ 9

*United States v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) .................................................................................................. 9

*United States v. Finley*,
    301 F.3d 1000 (9th Cir. 2002) .................................................................................................. 8

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ................................................................................................ 12

*United States v. Hanna*,
    293 F.3d 1080 (9th Cir. 2002) ................................................................................................ 15

*United States v. Morales*,
    108 F.3d 1031 (9th Cir. 1997) ................................................................................................ 15

*Valenzuela v. Equifax Info. Servs. LLC*,
    2015 U.S. Dist. LEXIS 151064 (D. Ariz. November 6, 2015) ............................................. 11

*Williams v. First Advantage LNS Screening Solutions Inc.*,
    2015 U.S.Dist.LEXIS 174590 (N.D.Fla. Mar. 31, 2015) ................................................ 11, 15

*Yourke v. Experian Information Services, Inc.*,
    2007 U.S.Dist.LEXIS 47558 (N.D.Cal. 2007) ...................................................................... 10

**Statutes**

FCRA ................................................................................................................................ 10, 11, 15

**Other Authorities**

Federal Rule of Evidence 702 ................................................................................ 8, 9, 12, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendants Nationstar Mortgage LLC and Veripro Solutions, Inc. move to exclude or limit the report, opinions, and testimony of Evan Hendricks, who has been designated as a credit reporting expert by plaintiffs Georgia Toland and Taquelia Washington-Toland.

Hendricks generally opines that Nationstar's credit reporting, both for the named Plaintiffs and the putative class members, is "inaccurate" and "incomplete" and disregards industry standards and applicable law. He further opines that Nationstar's credit reporting harmed the named Plaintiffs and putative class members by lowering their credit scores.

Hendricks lacks the necessary skill, qualifications, and experience to offer these opinions. He is not qualified to testify about credit reporting industry standards. He has never worked in the industry. He has only opined about it as a self-described "outsider." He has been disqualified or had his testimony limited numerous times based on this lack of experience.

Hendricks is also not qualified to testify as to ultimate conclusions, such as his opinion that Nationstar's credit reporting was inaccurate and/or incomplete. It is for the trier of fact, not Hendricks, to decide whether Nationstar's credit reporting was incomplete or inaccurate. Throughout his report Hendricks also quotes legal authorities or tries to summarize the law, including court cases and statutes. Hendricks is not qualified to do so. He is not a lawyer and it is for the Court to instruct the jury about the law.

Finally, Hendricks is not qualified to testify about any damages allegedly suffered by Plaintiffs or the putative class members. Hendricks has no economic or other specialized training that qualifies him to testify about any given plaintiff's damages, whether economic or otherwise.

Aside from the fact that Hendricks is not qualified to discuss damages, his methodology is also not reliable. As to the named Plaintiffs, Hendricks states Nationstar's credit reporting "likely" caused a drop in their credit score, which he conflates with a decrease in creditworthiness. However, Hendricks never clearly explains how he concluded Nationstar's credit reporting "likely" caused a drop in their credit score. Hendricks undertook no specific analysis using any

credit score models or simulators. And, he glosses over and ignores the fact that Plaintiffs had other negative items on their credit reports—which he does not dispute are inaccurate. Hendricks' failure to account for other negative items demonstrates that Hendricks' conclusion as to Plaintiffs' credit score lacks any reliability.

Moreover, Hendricks' conclusion that Nationstar's credit reporting harmed Plaintiffs' creditworthiness is equally unsupported. Hendricks' opinions about putative class members' damages is supported by no methodology whatsoever. Hendricks acknowledged he could not opine about putative class-action members' damages without specific information from them (an individualized analysis).

Finally, Hendricks' testimony is not helpful to the trier of fact. Hendricks' attempts to quote or summarize the law would not assist the jury, and would likely even confuse them. Similarly, Hendricks' testimony on ultimate conclusions, such as his testimony that Nationstar's reporting was inaccurate or incomplete, would not assist the jury. The jury is perfectly capable of making its own determination. Also, Hendricks' testimony as to Plaintiffs' damages is not helpful to the trier of fact. The jury can hear directly from Plaintiffs about their damages, if any, and draw its own appropriate conclusions.

As explained in greater detail below, Defendants therefore move to exclude (or severely limit) the testimony of Hendricks at trial in this matter.

## II. BACKGROUND FACTS

According to Hendricks, Plaintiffs retained him to apply his experience with and knowledge of credit reporting and credit scoring systems and standards to evaluate whether Nationstar adhered to credit reporting industry standards and to evaluate how Nationstar's actions harmed Plaintiffs' creditworthiness.[1] (Kemp Decl., Ex. A, at pp. 2, 3 [Hendricks' Report].)

However, Hendricks' expert report and C.V. demonstrate he does not possess the requisite experience or education to testify regarding industry standards for credit reporting or the

---

[1] Only Nationstar engaged in credit reporting. Veripro is an affiliate of Nationstar that collects on charged off loans on behalf of Nationstar and other mortgage servicers.

obligations of furnisherd of credit reporting information.  Hendricks holds no degrees or formal educational the in the areas that are the subject of his opinion.  (Kemp Decl., Ex. C, at 11:15–12:12 [Hendricks' Depo].)  Hendricks describes his work experience as that of "an outsider" to the industry.  (Kemp Decl., Ex. A, at p. 23.)  He has never worked for a furnisher of credit reporting information and has never worked for a consumer reporting agency.  (Kemp Decl., Ex. A, at p. 23; Kemp Decl., Ex. C, at 28:4–29:8.)

Nevertheless, Hendricks opines that: (1) Nationstar's credit reporting of plaintiffs' second mortgage was inaccurate and incomplete; (2) Nationstar's credit reporting harmed Plaintiffs' creditworthiness; (3) Nationstar's credit reporting practice likewise resulted in inaccurate and incomplete reporting of putative class members' junior loans after foreclosures and short sales; (4) Nationstar's credit reporting harmed putative class members; and (5) Nationstar's reporting violated Metro 2 reporting protocols and the California anti-deficiency law.  (Kemp Decl., Ex. A, at pp. 3, 4.)

### III.  GOVERNING STANDARDS

This Court determines the admissibility of expert testimony under the standards set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  The party that seeks to introduce the expert's proposed testimony bears the burden of establishing its admissibility.  Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592 n. 10.

"Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. The rule consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002).[2]

---

[2] Federal Rule of Evidence 702 provides as follows: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on (footnote continued)

1  Under *Daubert* and its progeny, the district court exercises a "gatekeeper" function to
2  "ensure that any and all scientific testimony ... is not only relevant, but reliable." *Daubert*, 509
3  U.S. at 589. To exercise its "gatekeeper" role, the district court "must satisfy [itself] that scientific
4  evidence meets a certain standard of reliability before it is admitted. This means that the expert's
5  bald assurance of validity is not enough. Rather, the party presenting the expert must show that
6  the expert's findings are based on sound science, and this will require some objective, independent
7  validation of the expert's methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311,
8  1316 (9th Cir. 1995).

## IV.  ARGUMENT

### A.  Hendricks Lacks Sufficient Expertise to Qualify.

"To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) (quoting Fed. R. Evid. 702). Courts properly exclude expert testimony where the expert's qualifications are only indirectly or tangentially related to the opinions offered. *See id.*; *see also United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 833 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011)

Hendricks concedes that he has never worked for a furnisher of credit reporting information and has never worked for a consumer reporting agency. (Kemp Decl., Ex. C, at 28:4–29:8.) Hendricks also has no degrees or specialized training in the areas that are the subject of his opinion. (Kemp Decl., Ex. C, at 11:15–12:12.) Instead, Hendricks is best characterized as a journalist and expert witness who writes and sometimes speaks on this subject area (and someone whose focus is often more about privacy rights rather credit reporting industry standards). (See generally Kemp Decl., Ex. A at pp. 20–26.) Moreover, as Hendricks freely admits, he approaches this subject area from the perspective of an "outsider." (Kemp Decl., Ex. A, at p. 23; Kemp Decl.,

---

sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Ex. C, at 28:4–29:8.)

Defendants are not the first to question Hendricks' qualifications. Hendricks has been disqualified as an expert witness in the area of credit reporting and re-investigation at least four times. *See Yourke v. Experian Information Services, Inc.*, 2007 U.S.Dist.LEXIS 47558, at *17, fn. 3 (N.D.Cal. 2007); *Thomas v. TransUnion,* 2002 WL 34369445 *1 (D.Or. 2002); *Apodaca v. Discover Financial Services, et. al.* 417 F.Supp.2d 1220, 1233 (D. N.M. 2006); *Sloane v. Equifax Information Services, Inc.,* 2006 WL 5376431 *1 (E.D.Va. 2006). Although Hendricks claims that he attaches a "complete list" of his testimony and expert reports, Hendricks omits from his report two of the four matters in which he was disqualified from testifying – the *Yourke* and *Apodaca* cases.

And even where Hendricks has been allowed to testify about credit reporting industry standards, Hendricks has been disqualified from providing ultimate conclusions—such as his conclusion here that Nationstar's reporting was "inaccurate" and/or "incomplete." *See*, *e.g*., *Malverty v. Equifax Info. Servs., LLC*, 2019 U.S. Dist. LEXIS 186082, *6 (M.D. Fla. October 28, 2019) (concluding Hendricks may not testify about whether defendants "existing procedures or conduct were unreasonable, reckless, inadequate, or offer any other legal conclusion"); *Cramer v. Equifax Info. Servs.*, 2019 U.S. Dist. LEXIS 161062, *10 (E.D. Mo. September 18, 2019) (finding Hendricks "will not be permitted to render a legal analysis or conclusions of law, which include any opinions on whether [defendant's] conduct failed to conform to a particular legal standard, as this is an ultimate issue that should be decided by the jury"); *McDonough v. JPMorgan Chase Bank, N.A.,* 2016 U.S. Dist. LEXIS 126755, *6-7 (E.D. Mo. September 16, 2016) ("Hendricks will not be permitted to provide any opinions as to whether [defendant's] actions were unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA"); *Anderson v. Equifax Info. Servs., LLC*, 2018 U.S. Dist. LEXIS 52939, *15 (D. Kan. March 29, 2018) ("Hendricks must avoid expressing ultimate legal conclusions"). It is for the trier of fact, not Hendricks, to decide whether Nationstar's credit reporting was incomplete, inaccurate, or disregarded the law and/or industry standards. *Shaw v. Experian Info. Solutions, Inc.*, 2016 U.S.Dist.LEXIS 134991, at *28 (S.D.Cal. Sep. 28, 2016) ("the accuracy of Defendant's reports is

more appropriately a question for a jury").

Likewise, Hendricks is not qualified to summarize or quote the law, as he does throughout his report; Hendricks is not a lawyer and it is the role of the Court to instruct the jury as to the law. "Mr. Hendricks is not qualified to read from and interpret judicial opinions. Likewise, allowing him to do so would confuse the jury, who would not understand the context of the discussion…" *Sandigo v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 105412, *22-23 (N.D. Cal. June 24, 2019). "[Th]is Court finds that such testimony [Hendricks opining as to intent of the law] improperly instructs the jury on the law." *Williams v. First Advantage LNS Screening Solutions Inc.*, 2015 U.S.Dist.LEXIS 174590, at *10-11 (N.D.Fla. Mar. 31, 2015); *see also Brown v. Vivint Solar, Inc.*, 2020 U.S. Dist. LEXIS 52590, *12 (M.D. Fla. March 26, 2020) (finding Hendricks' testimony about case law and historical background of the FCRA not helpful to the jury).

Hendricks has also been disqualified from testifying about credit reporting damages (which in his report here, Hendricks characterizes as "harm to creditworthiness") because he has no background in economics or any other specialized field that would allow him to opine as to the harm to plaintiffs. *See*, *e.g.*, *Brown*, 2020 U.S. Dist. LEXIS 52590, *6 ("Hendricks is not qualified to opine regarding Plaintiffs' damages or the emotional and physical damages that generally arise from FCRA violations"); *Malverty*, 2019 U.S. Dist. LEXIS 186082, at *2 (concluding that Hendricks could not testify regarding the plaintiff's emotional damages, nor could Hendricks testify regarding the types of damages that are common to people in comparable situations); *McDonough*, 2016 U.S. Dist. LEXIS 126755, *7 (same). "Hendricks is not qualified to address physical, emotional, or economic effects of an inaccurate credit report, or to estimate the value of 'expended time and energy to correct errors . . . in addition to loss of time and energy, loss of opportunity.'" *Valenzuela v. Equifax Info. Servs. LLC*, 2015 U.S. Dist. LEXIS 151064, *9-10 (D. Ariz. November 6, 2015); *see also Anderson*, 2018 U.S. Dist. LEXIS 52939, *12 ("Hendricks does not possess specialized training or experience in a field such as medicine, psychology, or economics that would qualify him to opine about whether Plaintiff has incurred certain types of injuries. Furthermore, his opinions regarding Plaintiff's damages amount to little more than speculation as to the injuries Plaintiff incurred").

1   In sum, because Hendricks lacks any formal education or work experience in the credit reporting industry at either a credit reporting agency or a furnisher of credit reporting information, he is not qualified to discuss industry standards. Nor is Hendricks qualified to opine as to ultimate conclusions about Defendants credit reporting—this is for the trier of fact to decide. Hendricks is also not qualified to testify about or summarize the law—this is for the Court. And finally, Hendricks has no background in economics and is not otherwise qualified to opine as to Plaintiffs' damages or the damages of any putative class-action members.

**B.    Hendricks' Opinions Are Not Reliable.**

"Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis*, 657 F.3d at 982. To satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert*, 43 F.3d at 1316. The Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999).

"While holding that the trial court has substantial discretion in discharging its gatekeeping obligation, [*Daubert*] suggested a number of factors that the court might consider: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (*citing Daubert*, 509 U.S. at 592-94).

Here, Hendricks' opinions as to damages for the named Plaintiffs and the putative class action members are not supported by any kind of reliable methodology. As to the named Plaintiffs, Hendricks opines that "Nationstar's reporting likely reduced Plaintiffs' credit scores." (Kemp Decl., Ex. A. at p. 12 [emphasis added].) While Hendricks attempts to explain in various

ways that derogatory (negative) credit reporting will lead to a decrease in a credit score, he undertook no specific analysis using any credit score models or simulators to attempt to explain how he concluded Plaintiffs' credit score would likely be reduced.[3] (See Kemp Decl., Ex. A.; Kemp. Decl., Ex. C, at 117:18–119:8.)

Hendricks' explanation that Nationstar's credit reporting caused a reduction in Plaintiffs' credit score also does not hold up because Hendricks does not evaluate how Nationstar's reporting was affected by pre-existing negative reporting on Plaintiffs' credit reports (related to their undisputed default on two loans and a foreclosure). (*See* Kemp Decl., Ex. A; Kemp. Decl., Ex. C at 120:14–121:15.) Hendricks' failure to separate out and account for Plaintiffs' undisputed pre-existing negative reporting dooms Hendricks' conclusion that Nationstar's reporting alone likely caused a decrease in plaintiffs' credit scores.

Similarly, Hendricks' reliance on a chart from FICO about the recency of a major derogatory item (*see* Kemp Decl., Ex. A at p. 15), to suggest a more recent major delinquency has a greater impact, is entirely misplaced. The chart was actually created by Defendants' credit reporting expert, John Ulzheimer, and he described the chart as follows:

> The chart refers specifically to the amount of time that has passed since the date of the most recent major delinquency event on a consumer's credit report (the value represented along the x-axis), and then juxtaposes that value to the directional risk that it represents (the value represented along the y-axis) as per our research.

(Kemp Decl., Ex. D at p. 7.) After reading Mr. Ulzheimer's report that explained the date of major delinquency for plaintiffs' junior loan was 2011, not 2016 or 2017, Hendricks agreed with Defendants' expert. (Kemp. Decl., Ex. C at 51:8–52:1.) Hence, Hendricks cannot rely on this chart (nor does he have anything else) to demonstrate Nationstar's credit reporting was more recent or more harmful than Plaintiffs' other negative credit items.

---

[3] As discussed above, Hendricks has never worked at a credit reporting agency or a lender, who are the entities that license and use the credit score model that Hendricks identifies in his report. (Kemp Decl., Ex. A. at pp. 12, 13.) Hendricks also acknowledges in his report the precise workings of the FICO credit score model are "proprietary" and "closely guarded." (Kemp Decl., Ex. A. at p. 14.)

Hendricks' opinion also conflates any reduction in credit score (which he only opined was "likely") with a decrease in creditworthiness. (Kemp Decl., Ex. A at pp. 12–15.) While Hendricks suggests a credit score below certain thresholds leads to decreased credit opportunities and increased cost of credit, he fails to provide any methodology for his conclusion that Nationstar's reporting "likely" caused a reduction in Plaintiffs' credit score or that this reduction was sufficient to impact Plaintiffs' ability to obtain credit. *Id*. Elsewhere, Hendricks also concedes that credit score is just one factor a lender uses when deciding to evaluate credit (other factors include income, employment, loan to value ratios). (Kemp. Decl., Ex. C at 142:2–7.) Hence, even if Plaintiffs' credit score dropped, Hendricks cannot simply conflate an unspecified (and only "likely") drop in Plaintiffs' credit score with a decrease in creditworthiness.

In the end, while Hendricks' opinion that Plaintiffs were "likely" harmed comes down to his purported personal experience—a hunch—without any facts or data. A proffered expert's reliance on his personal experience without such facts or data is insufficient. *See Rigas v. Allstate Ins. Co.*, 1998 WL 422671 (C.D. Cal. Apr. 16, 1998) (refusing to consider declaration of expert who claims that Defendant's actions were "unfair," "unreasonable," and "done with bad faith"); *Haines v. Honolulu Shipyard, Inc.*, 125 F.Supp.2d 1020, 1033 (D. Hawaii 2000) (excluding expert testimony on causation where Plaintiff had failed to introduce evidence on which expert could base his conclusion).

As to the putative class-action members, Mr. Hendricks' methodology is even less reliable—there is no methodology. Hendricks simply concludes that "regardless of overall strength or weakness of a Credit Reporting Class Member's credit report, the inaccurate and incomplete reporting of past-due and outstanding balances would negatively affect the borrower's credit score." (Kemp Decl., Ex. A at p. 18.) However, at his deposition, Mr. Hendricks made it clear he had no opinion about how the putative class members were harmed by Nationstar's credit reporting and would have to look at each individual putative class member's credit report to make any kind of conclusion about any drop in credit score, or any other kind of harm or damages. (Kemp. Decl., Ex. C at 152:18–155:2.)

As Hendricks provides no reliable methodology for either the named Plaintiffs' or the

putative class-members' damages, Hendricks should not be permitted to testify on the subject.

**C.      Hendricks' Opinions Would Confuse the Jury.**

"Expert testimony is admissible under Fed.R.Evid. 702 if it addresses an issue 'beyond the common knowledge of the average layperson.' " *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (citing *United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir. 1997)) (footnote omitted). Moreover, the expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Hendricks' opinions are also not helpful to assist the trier of fact and would actually confuse the jury in situations where he (1) quotes or summarizes the law; (2) provides ultimate conclusions, such as his opinion that Nationstar's reporting was inaccurate or incomplete; and (3) opines as to Plaintiffs' damages.

As discussed above, throughout his report, Hendricks attempts to summarize the law on credit reporting, California anti-deficiency's laws, and even cites a specific federal court case, *Kuns v. Ocwen Loan Servicing, LLC*, 611 Fed.Appx. 398 (9th Cir. 2015) which he contends sets forth the standard for Nationstar to follow here. (Kemp Decl., Ex. A at pp. 9, 10.) However, not only is Hendricks not qualified to testify about or summarize the law (he is not a lawyer), such testimony would not help the jury. *Sandigo*, 2019 U.S. Dist. LEXIS 105412, *22-23 ("allowing him [Hendricks] to do so [to testify about the law] would confuse the jury, who would not understand the context of the discussion"); *Williams*, 2015 U.S. Dist. LEXIS 174590, *11 (finding Hendricks' testimony about the law irrelevant); *Brown*, 2020 U.S.Dist.LEXIS 52590, at *12 (finding Hendricks' testimony on "case law to describe privacy rights," "the historical background of the FCRA and Congressional findings," and "FTC staff opinions" would not assist the jury).

Similarly, throughout Hendricks' report, he makes ultimate conclusions that Nationstar's reporting was inaccurate or incomplete. As discussed above, Hendricks is not qualified to make ultimate conclusions, as it for the trier of fact to make such decisions. For the same reason, such testimony by Hendricks is not helpful to the trier of fact. *See*, *e.g.*, *Cramer*, 2019 U.S. Dist. LEXIS 161062, at *10 (disqualifying Hendricks from testifying about ultimate conclusions). "[C]ourts must guard against invading the province of the jury on a question which the jury was

entirely capable of answering without the benefit of expert opinion." *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998) (citation omitted).

As to Plaintiffs' alleged damages, whether damage to creditworthiness or otherwise, Plaintiffs themselves are the best source of testimony in this subject area. *See*, *e.g.*, *Anderson*, 2018 U.S. Dist. LEXIS 52939, *12 (in finding Hendricks may not testify about the plaintiff's damages, the court concluded that the plaintiff's direct testimony about this subject would be the best source, something even Hendricks agreed with). Any testimony about how other persons might have been damaged is irrelevant and attempts to replace the trier of fact: "foreseeability of damages is a factual issue that is within the understanding of a lay juror" *Id*.

## V. CONCLUSION

For the above reasons, the Court should grant Defendants' motion to either entirely exclude the report, opinions, and testimony of Evan Hendricks or severely limit his testimony.

DATED: April 20, 2020

SEVERSON & WERSON
A Professional Corporation

By:   */s/ Erik Kemp*
　　　　Erik Kemp

Attorneys for Defendants NATIONSTAR MORTGAGE LLC and VERIPRO SOLUTIONS INC.