ARTHUR D. LEVY (SB # 95659)
arthur@yesquire.com
GINA DI GIUSTO (SB #293252)
gdigiusto@heraca.org
NATALIE LYONS (SB #293026)
nlyons@heraca.org
HOUSING AND ECONOMIC RIGHTS ADVOCATES
P.O. Box 29435
Oakland, California 94604
Telephone: (415) 702-4551

BRYAN KEMNITZER (SB # 66401)
bryan@kbklegal.com
KRISTIN KEMNITZER (SB # 278946)
Kristin@kbklegal.com
KEMNITZER, BARRON & KRIEG, LLP
42 Miller Ave., 3rd Floor
Mill Valley, CA 94941
Tel. (415) 632-1900

Attorneys for Plaintiffs
TAQUELIA WASHINGTON TOLAND AND GEORGIA TOLAND
Individually and on Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUELIA WASHINGTON TOLAND and GEORGIA TOLAND, individually and on behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; VERIPRO SOLUTIONS INC., a Delaware corporation, and DOES 1 through 20,<br><br>Defendants. | Case No. 3:17-cv-02575-JD<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: August 13, 2020<br>Hearing Time: 10:00 a.m.<br>Courtroom 11<br><br>CLASS ACTION |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD...........................................................................................................4

ARGUMENT ........................................................................................................................4

1.   Genuine Issues of Material Fact Preclude Summary Judgment on the Bona Fide Error Defense to Plaintiffs' Rosenthal Act Claim. ...................................4

2.   Actual Damages Are Not Required to Support Plaintiffs' Rosenthal Act Claim....7

3.   Plaintiffs Nevertheless Sustained Actual Damage As a Result of Defendants' Rosenthal Act Violations. ...................................................................8

4.   Willfulness Need Not Be Shown to Support Plaintiffs' Rosenthal Claim...............9

5.   Genuine Issues of Material Fact Preclude Summary Judgment on Whether Nationstar Knew or Should Have Known of the May 2012 Foreclosure Sale of Plaintiffs' Home...............................................................................................10

6.   Genuine Issues of Material Fact Preclude Summary Judgment on Whether Nationstar's Credit Reporting was Incomplete or Inaccurate...............................12

   a.   Nationstar's Reporting of Plaintiffs' Second Mortgage as *Currently* 180 Days Delinquent and with a *Current* Outstanding Balance Was Patently Inaccurate. 13

   b.   Nationstar's Reporting Was Misleading so as Likely to Adversely Affect Credit Decisions. ............................................................................16

   c.   Industry Standard Metro 2 Reporting Standards Confirm the Inaccuracy and Incompleteness of Nationstar's Reports. .......................................17

   d.   The Case Law Supports Plaintiffs, Not Nationstar .......................................18

7.   Plaintiffs Suffered Damages as a Result of Defendants' CCRAA Violations.......20

8.   Genuine Issues of Material Fact Preclude Summary Judgment on Whether Nationstar Willfully Violated the CCRAA............................................................21

9.   Defendants' UCL Arguments Lack Merit. ..........................................................24

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Abdelfattah v. Carrington Mortg. Servs. LLC,*
   No. C-12-04656-RMW, 2013 U.S. Dist. LEXIS 17517, at *9 (N.D. Cal. Feb. 7, 2013)14, 18

4

5

*Amey, Inc. v. Gulf Abstract & Tittle, Inc.,*
   758 F.2d 1486 (11th Cir. 1985) .......................................................................... 4

6

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 S.Ct. 2505 L.Ed.2d 202 (1986).................................................... 4

7

8

*Aulbach v. Experian Info. Sols., Inc.,*
   251 F. Supp. 3d 1281 (N.D. Cal. 2017) ............................................................ 17

9

*Barton v. Ocwen Loan Servicing LLC,*
   No. 12-162 (MJD/JJG), 2013 U.S. Dist. LEXIS 153276, at *14 (D. Minn. Oct. 25, 2013)23

10

11

*Bateman v. Am. Multi-Cinema, Inc.,*
   623 F.3d 708 n.1 (9th Cir. 2010) ...................................................................... 21

12

*Bondi v. Great S. Bank,*
   No. 16-cv-1282 (PAM/BRT), 2017 U.S. Dist. LEXIS 34113, at *1-2 (D. Minn. Mar. 9, 2017)
   ........................................................................................................................... 15

13

14

*Burrows v. Experian Info. Sols., Inc.,*
   No. 16-CV-06356-PJH, 2017 WL 1046973, at *11 (N.D. Cal. Mar. 20, 2017)............... 21

15

16

*Calvillo v. Experian Info. Sols., Inc.,*
   No. 2019 CV 00277 RFB NJK, 2020 WL 1549574, at *2 (D. Nev. Apr. 1, 2020).......... 20

17

*Carvalho v. Equifax Information Services, Inc.,*
   (9th Cir. 2010) 629 F.3d 876 ............................................................................. 12

18

19

*Casella v. Equifax Credit Info. Servs.,*
   56 F.3d 469 (2d Cir. 1995) ................................................................................ 21

20

*Clark v. Capital Credit & Collection Servs., Inc.,*
   460 F.3d 1162 (9th Cir. 2006) .......................................................................... 10

21

22

*Cortez v. Trans Union, LLC,*
   617 F.3d 688 (3d Cir. 2010) .............................................................................. 21

23

*Daugherty v. Ocwen Loan Servicing, LLC,*
   701 F. App'x 246 (4th Cir. 2017) ..................................................................... 23

24

25

*Fair v. Experian Info. Sols., Inc.,*
   No. C 16-5712 CW, 2017 WL 1164225, at *4 (N.D. Cal. Mar. 29, 2017) ................ 20, 21

26

*Fausto v. Credigy Servs. Corp.,*
   598 F. Supp. 2d 1049 (N.D. Cal. 2009) .............................................................. 9

27

28

*Fischer v. SunTrust Mortg. Inc.*,
   No. CV-15-02075-PHX-JJT, 2016 U.S. Dist. LEXIS 62285, at *7 (D. Ariz. May 10, 2016)
   ...................................................................................................... 23

*Gonzales v. Arrow Fin. Servs., LLC*,
   660 F.3d 1055 (9th Cir. 2011) ...................................................................... 8, 9

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) ........................................................ 2, 12, 13, 16

*Gray v. Ocwen Mortg. Servicing, Inc.*,
   No. 18-cv-01864-JD, 2019 U.S. Dist. LEXIS 121004, at *7 (N.D. Cal. July 19, 2019)... 19

*Guimond v. Trans Union Credit Info. Co.*,
   45 F.3d 1329 (9th Cir. 1995) ................................................................ 9, 20, 22

*Hawkins v. S2Verify LLC*,
   No. C 15-03502 WHA, 2016 U.S. Dist. LEXIS 3224, at *9 (N.D. Cal. Jan. 11, 2016).... 22

*Heaton v. Socal Finance, Inc.*,
   No. 14-cv-05191-TEH, at *11 n. 5 (N.D. Cal. Nov. 4, 2015) ........................ 22

*Herrera v. LCS Financial Services Corp.*,
   274 F.R.D. 666 (N. D. Cal. 2011)................................................................ 19

*Huizar v. Wells Fargo Bank, N.A.*,
   257 F. Supp. 3d 1103 (E.D. Cal. 2017) ...................................................... 14

*Hunt v. Check Recovery Sys., Inc.*,
   241 F.R.D. 505 (N.D. Cal. 2007)................................................................ 8

*Isham v. Gurstel, Staloch & Chargo, P.A.*,
   738 F. Supp. 2d 986 (D. Ariz. 2010) .......................................................... 5

*Johnson v. Wells Fargo Home Mortg., Inc.*,
   No. EDCV 13-01044-VAP (OPx), 2013 U.S. Dist. LEXIS 185345 (C.D. Cal. Sep. 13, 2013)
   ...................................................................................................... 18

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) .................................................................... 8

*Kort v. Diversified Collection Servs., Inc.*,
   394 F.3d 530 (7th Cir. 2005) .................................................................... 5

*Kuns Singh v. Wells Fargo Bank*,
   No. 2:15-cv-2664-JAM-EFB PS, 2017 U.S. Dist. LEXIS 131726, at *10 (E.D. Cal. Aug. 17,
   2017) ................................................................................................. 19

*Kuns v. Ocwen Loan Servicing, Ltd. Liab. Co.*,
   611 F. App'x 398 (9th Cir. 2015)................................................ 15, 19, 23, 24

*Marchisio v. Carrington Mortg. Servs., LLC*,
   919 F.3d 1288 (11th Cir. 2019) ................................................................ 15

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
   637 F.3d 939 (9th Cir. 2011) ............................................................. 4, 5, 9

*Milbourne v. JRK Residential America, LLC,*
    202 F. Supp. 3d 585 (E.D. Va. 2016) .............................................................. 22

*Montgomery v. Wells Fargo Bank,*
    No. C12-3895 TEH, 2012 WL 5497950, at *6 (N.D. Cal. Nov. 13, 2012)................ 20, 21

*Murphy v. Ocwen Loan Servicing, LLC,*
    No. 2:13-cv-555-TLN-EFB, 2014 U.S. Dist. LEXIS 86640, at *22 (E.D. Cal. June 20, 2014)
    .................................................................................................................... 18

*Nissou-Rabban v. Capital One Bank (USA), N.A.,*
    No. 15cv1675 JLS (DHB), 2016 U.S. Dist. LEXIS 81373, at *16 (S.D. Cal. June 6, 2016)18

*Prianto v. Experian Info. Sols., Inc.,*
    No. 13-cv-03461-TEH, 2014 U.S. Dist. LEXIS 94673, at *22 (N.D. Cal. July 10, 2014) 19

*Reichert v. Nat'l Credit Sys., Inc.,*
    531 F.3d 1002 (9th Cir. 2008) ..................................................................... 4, 5, 6, 7

*Riley v. Giguiere,*
    631 F.Supp.2d 1295 (E.D. Cal. 2009) ..................................................................... 9

*Ross v. RJM Acquisitions Funding LLC,*
    480 F.3d 493 (7th Cir. 2007) ..................................................................................... 7

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47, 57, 127 S. Ct. 2201 (2007)................................................................ 21, 23

*Satey v. JPMorgan Chase & Co.,*
    521 F.3d 1087 (9th Cir. 2008) ..................................................................................... 4

*Saunders v. Branch Banking & Trust Co. of Va.,*
    526 F.3d 142 (4th Cir. 2008) ................................................................................... 16

*Seamans v. Temple Univ.,*
    744 F.3d 853 (3rd Cir. 2014) ................................................................................... 12

*Tanimura v. Experian Info. Sols., Inc.,*
    2017 WL 1354767 (N.D. Cal. Apr. 13, 2017) .............................................................. 18

*Taylor v. First Advantage Background Servs. Corp.,*
    207 F. Supp. 3d 1095 (N.D. Cal. 2016) ..................................................................... 21

*Tourgeman v. Collins Fin. Servs.,*
    755 F.3d 1109 (9th Cir. 2014) ................................................................................... 24

*U.S. v. One Tintoretto Painting,*
    691 F.2d 603 (2d Cir. 1982) ..................................................................................... 4

*United Steelworkers of America v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989.) ................................................................................. 4

*Valentine v. First Advantage Saferent, Inc.,*
    No. EDCV 08-142 VAP (OPx), 2009 U.S. Dist. LEXIS 110153, at *25 (C.D. Cal. Nov. 23, 2009) ..................................................................................................................... 13

*Vargas v. Bank of Am., N.A.*,
   No. 12-cv-2247-L(MDD), 2013 U.S. Dist. LEXIS 49222, at *11 (S.D. Cal. Apr. 2, 2013) .... 19

*Yourke v. Experian Info. Sols., Inc.*,
   No. C 06-2370 CW, 2007 U.S. Dist. LEXIS 47558, at *15 (N.D. Cal. June 20, 2007) .... 15

**Federal Statutes**

15 U.S.C. § 1681s-2(a)(1)(A) .................................................................................... 12

15 U.S.C. § 1692k(a) ................................................................................................. 10

15 U.S.C. § 1692k(b)(2) ........................................................................................ 8, 10

15 U.S.C. § 1982e ....................................................................................................... 9

16 C.F.R. § 660.2(a) ................................................................................................. 14

**California Cases**

*Alborzian v. JPMorgan Chase Bank, N.A.*,
   235 Cal. App. 4th 29 (2015) ............................................................................ 13, 14

*Brown v. Jensen*,
   41 Cal. 2d 193 (1953) ............................................................................... 13, 14, 19

*Coker v. JPMorgan Chase Bank, N.A.*,
   62 Cal. 4th 667 (2016) ...................................................................................... 13

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .................................................................................. 24, 25

*Kahn v. Kahn*,
   68 Cal. App. 3d 372 (1977) .............................................................................. 12

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ........................................................................................ 25

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
   9 Cal. 5th 279 (2020) ........................................................................................ 24

*Olson v. Six Rivers Nat'l Bank*,
   111 Cal. App. 4th 1, 12 (2003) ......................................................................... 12

*Robinson v. U-Haul Co. of California*
   4 Cal.App.5th 304 (2016) ................................................................................. 25

*Trujillo v. First Am. Registry, Inc.*,
   157 Cal. App. 4th 628 (2007) ........................................................................... 20

**California Statutes**

Civ. Code § 1731.25(a) ............................................................................................. 23

Civ. Code § 1785.25 ................................................................................................. 15

Civ. Code § 1785.25(a) ................................................................... 12, 21

Civ. Code § 1788.17 ................................................................ 7, 8, 9, 10

Civ. Code § 1788.30(a) ......................................................................... 7, 8

Civ. Proc. Code § 580b(a)(3) .................................................................. 23

Civ. Prof. Code § 580b ................................................................... passim

Civ.Code § 1788.30(b) ...................................................................... 8, 9

Civ.Code § 1788.30(a) ........................................................................... 8

**Other Authorities**

*40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations,*
    Fed. Trade Comm'n 40 (July 2011) ................................................. 14

1

**INTRODUCTION**

2      For the following reasons, the Court should deny Defendants' Motion for Summary

3 Judgment:

4      **Genuine Issues of Material Fact Preclude Summary Judgment on the Bona Fide**

5 **Error Defense to Plaintiffs' Rosenthal Act Claim**:  Defendants mount no challenge to the

6 deceptiveness of Veripro's collection letters, and instead attempt to excuse Veripro's mailing of

7 the multiple collection letters to Plaintiffs by calling it a "bona fide error." This affirmative

8 defense is their burden, and one they have dramatically failed to meet.  Defendants' claim that

9 Veripro sent the letters because of a property address mix-up is contrived.  Their own records

10 show that as early as December 2014, they knew or should have known that Plaintiffs' condo had

11 been foreclosed in May 2012, long before the collection letters were sent.  *See* pp. 5-6; 10-12,

12 *infra*.

13      Further, Veripro configured its own automated "lien scrub" system to default collection

14 accounts to "secured" (*i.e.*, collectible) whenever the third-party lien scrub reports returned

15 *inconclusive* data on whether a loan was, in fact, secured.  In disregard of whether or not the loan

16 was still secured, Veripro proceeded to collect it anyway.  Veripro's flawed lien scrub system is

17 further evidenced by Defendants' admission that Veripro sent collection letters to borrowers on

18 300 loans potentially covered by California's anti-deficiency protection. *See* pp. 6-7, *infra*.

19      **Plaintiffs Sustained Actual Damage As a Result of Defendants' Rosenthal Act**

20 **Violations:**   Defendants ignore that Plaintiffs' claims are brought under the provisions of the

21 Federal Debt Collection Practices Act (FDCPA) incorporated into the Rosenthal Act under Cal.

22 Civ. Code § 1788.17.  The incorporated FDCPA provisions do not require any showing of actual

23 damage to support a claim for either individual or class-wide statutory damages.  And though

24 Plaintiffs do not claim Rosenthal actual damages, they sustained actual damage from Defendants'

25 Rosenthal Act violations in the form of out-of-pocket expenses incurred during their visits with

26 counsel and emotional distress after receiving multiple, admittedly unjustified collection letters

27 from Veripro demanding tens of thousands of dollars.  *See* pp. 8-9, *infra*.

28

**Willfulness is Not Required to Recover Rosenthal Act Statutory Damages:**   Nor is any showing of willfulness required to recover Rosenthal Act statutory damages under the incorporated provisions of the FDCPA.  *See* pp. 9-10, *infra*.  Even so, Defendants' conduct was willful—indeed, reckless.  Not only did the property and credit reports they ordered and the many pieces of mail they sent to Plaintiffs' Hayward condo address returned undeliverable place them on direct and clear notice of the May 2012 foreclosure sale, Veripro designed its automated lien scrub system to ignore information indicating that a foreclosure sale might have taken place on Plaintiffs' property.  *See* pp. 5-7, *infra*. Under such circumstances, proceeding to collect on the debt was in "careless disregard" of their duties under the Rosenthal Act.

**Genuine Issues of Material Fact Preclude Summary Judgment on Whether Nationstar's Credit Reporting was Incomplete or Inaccurate:**   Defendants have failed to carry their burden to show that reporting Plaintiffs as *currently* 180 days delinquent with a large *current* outstanding balance was "incomplete or inaccurate," notwithstanding that California anti-deficiency law insulated Plaintiffs against all such liability.  Nationstar provides no evidence to establish that its reporting *was* accurate and complete or that it even believed it was.

Nationstar's reporting was inaccurate, both because it was "patently incorrect" and because it was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  This standard presents significant factual issues, which Nationstar fails even to address.  By contrast, Plaintiffs have come forward with ample evidence showing that Nationstar's reporting was inaccurate and incomplete, including the declaration of Plaintiffs' expert, Evan Hendricks.  *See* pp. 13-18, *infra*.

The Ninth Circuit decision in *Kuns v. Ocwen Loan Servicing, Ltd. Liab. Co*., 611 F. App'x 398, 399-400 (9th Cir. 2015), FTC guidance, and industry-standard Metro 2 standards all uniformly mandated reporting of a zero balance.  *See* pp. 14-18, *infra*.  None of the unreported District Court cases Nationstar cites holds, contrary to the Ninth Circuit in *Kuns*, that a furnisher report of a *current* outstanding balance on a California purchase money mortgage deficiency and a *current and ongoing* 180-day delinquency is accurate or complete under the CCRAA.  *See* pp. 18-19, *infra*.

1    **Genuine Issues of Material Fact Preclude Summary Judgment on Whether**

2    **Nationstar Willfully Violated the CCRAA:**  Defendants submit no evidence to carry their

3    burden to show that their reporting of Plaintiffs' loan as currently delinquent with a current

4    outstanding balance of $87,000 or more was *not* willful.  Nevertheless, there is compelling

5    evidence that Defendants' acted in willful disregard of whether their reporting of a large current

6    balance as delinquent complied with the CCRAA.  At the time it began reporting in late 2014,

7    Nationstar had ample evidence, including broker price opinions and credit reports, which

8    Nationstar itself had obtained under its own procedures, showing that the property had been

9    foreclosed in May 2012 and resold in February 2013.  *See* pp. 10-11, *infra*.  Further, Nationstar

10   subscribed to Metro 2 reporting standards requiring it to report post-foreclosure balances for

11   which the borrower was not liable with "a Current Balance and Amount Past Due of zero."

12   Nationstar disregarded those standards.  Nationstar ignored the Ninth Circuit's decision in *Kuns*,

13   issued during the time when Nationstar was reporting on Plaintiffs' loan, and clear contrary FTC

14   guidance on accurate reporting.  *See* pp. 21-24, *infra*.  Mr. Hendricks's testimony provides

15   uncontradicted supporting evidence.

16   **Plaintiffs "Suffered Damage" from Nationstar's Credit Reporting Violations:**

17   Plaintiffs "suffered damage" for purposes of subsection (a) of section 1785.31. Plaintiffs' actual

18   damage from Nationstar's CCRAA violations include significant emotional distress; credit repair

19   expenses; travel expenses to consult their counsel; and interest payments on Plaintiff Georgia

20   Toland's car loan resulting from her inability to obtain a 0% rate.  *See* pp. 19-21, *infra*.

21   **Defendants' UCL Arguments Are Without Legal Merit:**   Plaintiffs have both

22   "unlawful" and "fraud" prong UCL claims.  Their "unlawful" prong claims are supported by

23   Defendants' violations of the Rosenthal Act, which Defendants do not challenge except under the

24   "bona fide error" defense, and of the CCRAA.  Defendants fail to carry their burden of proving

25   that their collection letters were *not* deceptive under the "likely to be deceived" standard that

26   governs UCL "fraud" prong and False Advertising Law claims.  Plaintiffs have valid remedies for

27   their UCL representative action claims for class-wide restitution and public injunctive relief.  *See*

28   pp. 24-25, *infra*.

1

**LEGAL STANDARD**

2    On summary judgment, the Court should resolve all ambiguities and inferences to be

3  drawn from the underlying facts in the light most favorable to the non-moving party. *Satey v.*

4  *JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). "[T]he key is issue-finding, not

5  issue-resolution." *U.S. v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir. 1982). All

6  "justifiable inferences" must be drawn in Plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.,* 477

7  U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8    A "justifiable inference" is not necessarily the most likely inference or the most

9  persuasive inference. Rather, "an inference as to another material fact may be drawn in favor of

10  the nonmoving party . . . if it is 'rational' or 'reasonable.'" *United Steelworkers of America v.*

11  *Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989). Even when the facts are not in

12  dispute, "[a]ll reasonable doubts and inferences should be resolved in favor of the opponent. If

13  reasonable minds differ on the inferences generated by undisputed facts, then summary judgment

14  is inappropriate." *Amey, Inc. v. Gulf Abstract & Tittle, Inc.,* 758 F.2d 1486, 1502 (11th Cir.

15  1985).

16

**ARGUMENT**

17   **1.    Genuine Issues of Material Fact Preclude Summary Judgment on the**
         **Bona Fide Error Defense to Plaintiffs' Rosenthal Act Claim.**

18

19    Defendants have failed to meet their burden to demonstrate that Veripro sent the letters to

20  Plaintiffs because of a genuine mistake, made notwithstanding their implementation of

21  "reasonable preventive procedures aimed at avoiding the error[]." *Reichert v. Nat'l Credit Sys.,*

22  *Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). Rather, they contrive an explanation that ignores the

23  evidence demonstrating that the Veripro letters were sent as a result of their reckless automated

24  collection system.

25    Plaintiffs agree that the Court should decide the "bona fide" error defense based on federal

26  standards under the FDCPA. Mot. at p. 8 n. 2. The FDCPA is "a strict liability statute, [but] it

27  excepts from liability those debt collectors who satisfy the '*narrow*' bona fide error defense."

28  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011)

1    (citations omitted) (emphasis added).

2           "The bona fide error defense is an affirmative defense, for which the debt collector has the

3    burden of proof." *Reichert,* 531 F.3d at 1006.  To meet this burden, Defendants must demonstrate

4    that the FDCPA violation was (1) unintentional, (2) "resulted from a bona fide error," and (3) that

5    they "maintained procedures reasonably adapted to avoid the violation." *McCollough*, 637 F.3d at

6    948 (citing 15 U.S.C. § 1692k(c)).

7           To prove a "bona fide" error, Defendants have the burden of demonstrating that sending

8    the collection letters to Plaintiffs was "a *genuine* mistake, not a contrived [one]." *Isham v.*

9    *Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 998 (D. Ariz. 2010) (emphasis in original)

10   (citing *Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 538 (7th Cir. 2005)).

11          Defendants' alleged "error" does not meet this standard.  Defendants claim that the "lien

12   scrubs" employed by Veripro "failed to identify plaintiffs' property as having been foreclosed …

13   due only to a discrepancy with their property address," and thus, Veripro made a "good faith"

14   error when it sent multiple form collection letters to Plaintiffs over the course of six months' time.

15   Mot. at 9:8-18.

16          This is a contrivance that ignores critical facts.  Long before the letters were sent, both

17   Veripro and Nationstar knew that Plaintiffs no longer lived in their Hayward condo, and both had

18   *actual notice* that the property had been sold at a foreclosure sale.   Nationstar had sent 8 letters to

19   Plaintiffs at the Hayward condo address, all of which were returned undeliverable.  Levy Dec. Ex.

20   23 (pp. 2-11); *see also* Levy Dec. ¶ 5 & Ex. 4 (return envelopes from Nationstar

21   correspondence).[1]  Only after sending another four letters to the Hayward address that were

22   returned (Ex. 20), did Veripro begin sending letters to Plaintiffs' home address in Oakland, which

23   of course was different from the Hayward address of the property that secured the junior loan.  A

24   dozen returned letters, coupled with the fact no payments had been made on the loan after the

25   May 2012 foreclosure (Levy Dec. ¶ 18 & Ex. 28; Kemp Dec. (ECF No. 76-3) Ex. "A" at 81:22-

26

27   [1] Unless otherwise stated or indicated by context, "Ex." refers to the exhibits to the accompanying
     Declaration of Arthur D. Levy concurrently submitted in opposition to this motion.

28

25), was a red flag that a foreclosure sale had likely occurred.  Yet, other than its flawed "lien scrub" system (described below), Veripro took no steps to investigate whether the condo had already been sold.

Indeed, even before it referred Plaintiffs' loan to Veripro for collection, Nationstar had ordered reports that disclosed the 2012 foreclosure sale of Plaintiffs' condo.   In December 2014, as part of its "junior equity lien loss analysis," Nationstar obtained broker price opinions showing that the property had been sold and that Plaintiffs were no longer on title, and credit reports specifically reporting the May 2012 foreclosure sale.  *See* pp. 10-11, *infra*.

In May 2016, Veripro itself obtained a full Experian credit report on Georgia Toland that reported the foreclosure sale. Ex. 12 at 100:6-102:10; 127:18-130:10; Kemp Dec. (ECF. No. 76-3) Ex. "E" at p. 15 ("Ulzheimer Report")(Plaintiffs' credit reports listed the foreclosure sale before Nationstar began reporting). Veripro obtained another credit report before the 2017 letters were sent that would have again revealed the foreclosure. Ex. 12 at 116:12-18.  Under Veripro's procedures, an agent was supposed to review all of these reports before the collection letters were sent.  *Id.* at 127:18-130:10; 89:13-90:13; Ex. 40 at pp. 29-31 (showing multiple outbound calls).

Nor did Defendants "maintain procedures reasonably adapted to avoid" the violation. *Reichert,*  531 F.3d at 1006.  To meet its burden, Veripro must "produce evidence of reasonable preventive procedures aimed at avoiding the errors." *Id.* This means that the procedures in place at the time the letters were mailed must have been "designed to avoid discoverable errors." *Id.* at 1007.

By contrast, Veripro's procedures invited its violations. Veripro's automated "lien scrub" system, which it ran on all loans under its standard loan boarding procedures, automatically "defaulted" collection accounts to "secured" (*i.e.*, collectible) whenever the lien scrub returned inconclusive results on whether the loan was still secured. Ex. 12 at 66:23-67:8; 68:2-69:10. Veripro's *system* was to ignore information indicating that a foreclosure might have occurred that rendered a loan uncollectible and to proceed to collect anyway.

Veripro's systemic decision to presume that Plaintiffs' loan was collectible, in disregard of the failure of its lien scrub process to confirm that it was, was Veripro's "error." Defendants'

1    characterization of Plaintiffs' case as a "one off" is also belied by their admission that Veripro

2    sent collection letters on 300 loans also potentially covered by California's anti-deficiency

3    protection. Ex. 11 at 5:27-6:6; Lyons Dec. ISO Class Cert. (ECF No. 72-2) ¶¶ 12, 13 (Plaintiffs

4    estimate that the comparable number of accounts to be 677).  This pattern wholly undermines

5    Defendants' assertion that its conduct as to Plaintiffs was a genuine, one-off mistake born out of a

6    single address mix-up.

7         This clear disconnect between Veripro's stated policy "not to collect on sold-out junior

8    loans in California" (Mot. at 8:13-14) and its actual practice demonstrates that Defendants failed

9    to establish "reasonable preventive procedures aimed at avoiding [known] errors." *Reichert*, 531

10   F.3d at 1006.   Defendants' own system gave them reason to be unsure about the occurrence of a

11   foreclosure, but they continued collecting anyway.

12        Defendants seek support from *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497

13   (7th Cir. 2007), but their efforts are misplaced.  In *Ross*, the defendants obtained a debt held in a

14   person's name that was different from the name she used in her bankruptcy proceedings, which

15   were ultimately successful. *Id.* at 496. The court found that the debt collector instituted reasonable

16   procedures, including conducting "computerized searches of bankruptcies," using the name in

17   their database. But because they had the wrong name, they were never actually aware that the

18   debt had been discharged in bankruptcy. *Id.* at 497. Veripro's actions are readily distinguishable.

19   While the *Ross* defendant had no reason to know that it was collecting on a debt discharged in

20   bankruptcy, Veripro systematically disregarded its own lien scrub results.

21        **2.    Actual Damages Are Not Required to Support Plaintiffs' Rosenthal Act**
              **Claim.**
22

23        Defendants base their argument on pages 11-12 of their motion on Civil Code section

24   1788.30(a), which is part of the original Rosenthal Act.  But Plaintiffs' Rosenthal Act claims are

25   not based on any violation of the original Act.  Instead, they are based on violations of provisions

26   of the FDCPA that the Legislature later incorporated into the Rosenthal Act.  Civ. Code §

27   1788.17; ECF No. 1 at pp. 25-26 (Complaint ¶¶ 29-31).

28        Statutory damages under the incorporated FDCPA civil remedies section, 15 U.S.C. §

1   1692k(b)(2)), are the principal remedy Plaintiffs seek under the Rosenthal Act.  Complaint at p.

2   11 ("Relief Sought," subparagraph "d").   And no actual damages need be shown to support a

3   FDCPA statutory damage award.  *See, e.g.*, *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998)

4   (FDCPA "is blind when it comes to distinguishing between plaintiffs who have suffered actual

5   damages and those who have not"); *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D.

6   Cal. 2007).

7         The incorporation statute, section 1788.17, overrides the original provisions of the

8   Rosenthal Act, including the provision Defendants cite, section 1788.30(a).  Section 1788.17

9   states that "*Notwithstanding any other provision of this title*, every debt collector collecting or

10  attempting to collect a consumer debt shall comply with the provisions of" the listed provisions of

11  the FDCPA. (Emphasis added.) The Ninth Circuit has disposed of the argument that the

12  incorporated provisions of the FDCPA are limited by the original provisions of the Rosenthal Act,

13  such as Civil Code section 1788.30(a) and (b): "By use of the phrase 'notwithstanding any other

14  provision,' the 1999 amendment [to § 1788.17] unambiguously supersedes any provision of the

15  Rosenthal Act inconsistent with the referenced provisions of the FDCPA, including those

16  subjecting debt collectors to class actions." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055,

17  1065 (9th Cir. 2011). Therefore, Plaintiffs need not prove any actual damages in order to maintain

18  their Rosenthal Act-based causes of action.

19        **3.    Plaintiffs Nevertheless Sustained Actual Damage As a Result of**
           **Defendants' Rosenthal Act Violations.**
20

21        Plaintiffs are not seeking actual damages for themselves on their Rosenthal Act claim.

22  Nevertheless, Defendants' violations did cause them actual damage.  Plaintiffs are entitled to

23  bring a class action for statutory damages under the FDCPA, even though they assert no personal

24  claims for actual damages. *See, e.g.*, *Keele*, 149 F.3d at 593-94; Plaintiffs' Reply in Support of

25  Mot. for Class Certification at 12-13 (collecting cases).

26        Plaintiffs incurred (albeit limited) pecuniary expenses as a result of Defendants' Rosenthal

27  Act violations. Their meetings with counsel led to related travel costs.   Toland Dec.; Ex. 14 at

28  88:10-16.  Such out-of-pocket expenses are recoverable as actual damages. *See, e.g.*, *Fausto v.*

*Credigy Servs. Corp.*, 598 F. Supp. 1049, 1054 (N.D. Cal. 2009) (FDCPA actual damages include "out of pocket expenses" as well as "damages for personal humiliation, embarrassment, mental anguish or emotional distress") (internal citations omitted).

Plaintiffs also suffered actual damage in the form of emotional distress. The confusion and uncertainty prompted by Veripro's letters caused both Plaintiffs to experience sustained anxiety and, at times, panic over their liability for the debt. With each letter, their anxiety levels compounded. Ex. 15 at 56:7-18, 57:25-58:10, 61:13-20; 63:21-64:5, 65:9-66:1; Ex. 14 at 71:21-72:17, 78:2-8, 81:9-14.  Emotional distress damages are recoverable for violations of the FDCPA. *McCollough*, 637 F.3d at 957-58 (affirming jury award of emotional distress damages for violation of 15 U.S.C. § 1982e).[4]

Defendants' assertion that Plaintiffs have "no evidence" of actual damage from the Rosenthal Act violations is based solely on an interrogatory answer requesting "the total dollar amount of damages YOU contend YOU are entitled to recover from DEFENDANTS in this action."  Mot. at pp. 11-12; Kemp Dec. (ECF No.  87-1) Ex. "A". Plaintiffs' answer is accurate because they are not seeking to recover actual damages for the Rosenthal Act violations. Plaintiffs fully disclosed in their depositions that they had sustained out-of-pocket expenses and emotional distress as a result of Veripro's debt collection letters.

### 4.    Willfulness Need Not Be Shown to Support Plaintiffs' Rosenthal Claim.

Defendants' argument that Plaintiffs must show a willful violation of the Rosenthal Act likewise runs afoul of the Act's FDCPA incorporation provision.  As explained above, under Civil Code section 1788.17 and the Ninth Circuit decision in *Gonzales*, the incorporated provisions of the FDCPA supersede section 1788.30(b).

The FDCPA is a strict liability statute; proof of knowledge, intent, or willfulness is not

---

[4] The district courts largely hold that, like the FCRA, the FDCPA does not impose a heightened standard, such as a showing of intentional infliction. *Riley v. Giguiere*, 631 F.Supp.2d 1295 (E.D. Cal. 2009). The FCRA "standard is met simply by plaintiff tendering evidence of [the plaintiff's] actual emotional distress, without incorporating the state law's tort elements." *Riley*, 631 F. Supp. 2d at 1315 (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

1    required to establish liability and recover statutory damages. *Clark v. Capital Credit & Collection*

2    *Servs., Inc.,* 460 F.3d 1162, 1175-76 (9th Cir. 2006). *See* Cal. Civ. Code § 1788.17 (incorporating

3    15 U.S.C. § 1692k, which imposes no "scienter" requirement).  Nor is the defendant's state of

4    mind even relevant to the *amount* of a statutory damages award.  To determine the amount of

5    individual statutory damages, courts consider a mix of factors, including "the frequency and

6    persistence of noncompliance by the debt collector, the nature of such noncompliance, and the

7    extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1); § 1692k(b)(2)

8    (same considerations for classwide statutory damages, but also including "the resources of the

9    debt collector" and "the number of persons adversely affected").

10           There is ample evidence, nevertheless, that Defendants acted "willfully"—that is, "in

11   careless disregard" of their obligations to borrowers under the Rosenthal Act. As shown above,

12   before Veripro sent the collection letters to Plaintiffs, both Defendants were already on clear

13   notice that Plaintiffs had moved. They ignored returned mail and their own property valuation and

14   credit reports showing that Plaintiffs' condo had been foreclosed and resold, despite procedures

15   requiring those documents to be reviewed. *See* pp. 5-6, *supra;* pp. 10-11, *infra*. And Veripro's

16   system of "defaulting" loan accounts to secured status automatically disregarded information

17   calling the secured status of Plaintiffs' mortgage into doubt.  *See* pp. 6-7, *supra*.

18          **5.    Genuine Issues of Material Fact Preclude Summary Judgment on Whether
               Nationstar Knew or Should Have Known of the May 2012 Foreclosure Sale of
19             Plaintiffs' Home.**

20           Nationstar claims that it did not know or have reason to know of the 2012 foreclosure sale,

21   citing to Mr. Loll's testimony as its sole evidence to carry Nationstar's summary judgment

22   burden.  Mot. at 17-18. Yet, Mr. Loll merely states that the data Bank of America provided

23   Nationstar at the time of the servicing transfer did not disclose the foreclosure sale. Loll Dec. ¶¶

24   11, 12. He does not testify that Nationstar possessed no information regarding the foreclosure on

25   Plaintiffs' senior lien, such as foreclosure information from some source other than the BofA

26   data. Lack of BofA data is, standing alone, insufficient to negate that Nationstar knew or should

27   have known of the foreclosure sale from some other source.

28           There is compelling evidence that Nationstar knew, or had at least actual or inquiry notice,

1   that Plaintiffs' condo had been sold at a foreclosure sale in May 2012, when Nationstar began

2   credit reporting their second mortgage in late 2014.  Nationstar's general procedures include

3   conducting a "junior equity lien loss analysis" on all stand-alone junior mortgages it is servicing

4   that are at least three months past due.  Ex. 8 at 63:6-65:18; 85:24-86:21:5-17 & Ex. 27.

5   Plaintiff's mortgage was "stand alone"—Nationstar was not servicing the first—and as of the

6   November 2013 loan servicing transfer to Nationstar, no payments had been made since August

7   2011.  Levy Dec. ¶ 29 & Ex. 28.

8       Nationstar's junior equity lien loss procedures require obtaining a broker price opinion

9   (BPO) and a borrower credit report.  Ex. 8 at 86:22-87:9; 87:10-88:2.  Both reports are saved to

10  Nationstar's system of record and accessible to Nationstar personnel.  *Id.* at 89:12-90:19.

11  Nationstar requires that a manager review the BPO and credit report to decide whether to pass or

12  proceed to bid during a foreclosure.  Ex. 27 at NSM/Toland 002745-47.

13      On December 1, 2013, Bank of America transferred the second mortgage to Nationstar for

14  servicing.  Ex. 5.  On December 3, 2014, in accordance with its junior lien loss procedure,

15  Nationstar obtained a BPO on the Tolands' condo.  Ex. 8 at 106:3-10; 113:2-114:5 & Ex. 24; Ex.

16  23 at p. 3.  The BPO listed the owner of the Tolands' condo as "Mary Hahn"; it also listed the

17  post-foreclosure resale of Plaintiffs' unit as one of the comparable sales. At the same time,

18  Nationstar obtained a "CA Risk Profiler" Report on the condo that reported that the Tolands' unit

19  had been resold for $166,900 on February 21, 2013, months after the foreclosure sale. Ex. 25.

20  Also on the same day, Nationstar obtained a credit report on the Georgia Toland, per its junior

21  lien loss procedure.  The credit report listed the first mortgage as having been foreclosed in 2012.

22  Ex. 8 at 106:11-22; 115:19-116:24 & Ex. 26; Ex. 23 at p. 3.

23      Thus, Nationstar had obtained ample documentation showing that Plaintiffs condo had

24  been foreclosed in 2012 and resold in February 2013. Viewed most favorably to Plaintiffs, this

25  evidence shows that Nationstar recklessly reported the loan as delinquent with an outstanding

26  balance when it knew or, minimally, *should have known* that it had already been foreclosed,

27

28

1    eliminating Plaintiffs' personal liability for the deficiency.[5]

2

3    **6.   Genuine Issues of Material Fact Preclude Summary Judgment on Whether Nationstar's Credit Reporting was Incomplete or Inaccurate.**

4         California Civil Code section 1785.25(a) prohibits "furnish[ing] information on a specific

5    transaction or experience to any consumer credit reporting agency if the person knows or should

6    know the information is incomplete or inaccurate."  This subsection is modeled on a parallel

7    provision of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(a)(1)(A). And

8    "[b]ecause the [CCRAA] is substantially based on the Federal Fair Credit Reporting Act (15

9    U.S.C. §§ 1681–1681t), judicial interpretation of the federal provisions is persuasive authority

10   and entitled to substantial weight when interpreting the California provisions."  *Olson v. Six*

11   *Rivers Nat'l Bank,* 111 Cal. App. 4th 1, 12 (2003), *citing Kahn v. Kahn,* 68 Cal. App. 3d 372, 387

12   (1977); *see also Carvalho v. Equifax Information Services, Inc.,* 629 F.3d 876, 889 (9th Cir.

13   2010).

14        The standard for accuracy under the FCRA is well established.  A credit report is

15   "inaccurate" if it is either "patently incorrect, or because it is misleading in such a way and to

16   such an extent that it can be expected to adversely affect credit decisions."  *Gorman v. Wolpoff &*

17   *Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).  The Ninth Circuit has applied the *Gorman*

18   accuracy standard to the CCRAA.  *Carvalho*, *supra*, 629 F.3d at 890 ("we operate under the

19   assumption that California courts would interpret the FCRA and CCRAA consistently").

20        Whether a report is "inaccurate" under the *Gorman* standard presents an issue of fact that

21   should ordinarily be submitted to the trier of fact.  *Seamans v. Temple Univ.*, 744 F.3d 853, (3rd

22   Cir. 2014) ("Whether technically accurate information was 'misleading in such a way and to such

23   an extent that [it] can be expected to have an adverse effect' is generally a question to be

24

25   [5]  Nationstar knew or should have known that the mortgage was purchase money.  Nationstar's loan data indicated that the loan was a purchase money loan with original owner occupancy. Ex.

26   12 at 151:2-154:25 & Ex. 28.  Nationstar's address of record for Plaintiffs was the property address, confirming owner occupancy.  Ex. 23.  Nationstar had Plaintiffs' loan application and

27   loan closing statement, indicating purchase money status.  Ex. 8 at 106:23-109:8; Levy Dec. ¶¶ 22, 23 & Ex. 23, 24.

28

1   submitted to the jury", citing *Gorman,* 584 F.3d at 1163); *Valentine v. First Advantage Saferent,*

2   *Inc.*, No. EDCV 08-142 VAP (OPx), 2009 U.S. Dist. LEXIS 110153, at *25-26 (C.D. Cal. Nov.

3   23, 2009).

4           Nationstar presents no evidence to carry its burden of showing that its reporting of

5   Plaintiffs' second mortgage was accurate and complete.  None of the declarations Nationstar

6   submits in support of this motion attests to the accuracy or completeness of Nationstar's credit

7   reporting.  Specifically, the reports of Nationstar's expert, Mr. Ulzheimer, venture no such

8   opinion.  Because Nationstar has failed to carry its burden to negate Plaintiffs' allegations that

9   Nationstar's credit reporting was incomplete and inaccurate, summary judgment should be

10  denied.

11          **a.  Nationstar's Reporting of Plaintiffs' Second Mortgage as *Currently* 180**
            **Days Delinquent and with a *Current* Outstanding Balance Was Patently**
12          **Inaccurate.**

13          The California Supreme Court has broadly interpreted the language of section 580b as

14  doing more than just literally barring "deficiency judgments."  The statute exonerates the

15  borrower from all personal liability for the debt.  *Brown v. Jensen*, 41 Cal. 2d 193 (1953)  and its

16  consistent progeny hold that a purchase money mortgage lender can collect only from the real

17  property security and, after a foreclosure sale, nothing from the borrower personally. *Id.* at 197.

18          Therefore, when the first purchase money mortgage holder foreclosed on Plaintiffs' condo

19  in May 2012, the foreclosure sale wiped out not only lien of the second mortgage, but Plaintiff's

20  entire personal liability to pay the deficiency balance.  *Coker v. JPMorgan Chase Bank, N.A.*, 62

21  Cal. 4th 667, 676 (2016) ("For more than half a century, this court has understood [Section 580b]

22  to limit a lender's recovery on a standard purchase money loan to the value of the security, no

23  matter how the security has been exhausted—indeed, even if *no sale* has occurred under the deed

24  of trust securing the unpaid loan", emphasis in original); *Alborzian v. JPMorgan Chase Bank,*

25  *N.A.*, 235 Cal. App. 4th 29, 35 (2015) ("[A] junior lienholder whose loan is used to purchase a

26  parcel of property and is secured by that property *has no legal right to enforce its debt against the*

27  *borrower personally* if the sale price at a foreclosure on that property initiated by any other

28  lienholder who lent money for the purchase price is insufficient to pay off the debt."))

Yet for 17 consecutive months beginning in late 2014, over two years after the foreclosure sale, Nationstar continued to report Plaintiffs' second loan as *currently* 180 days delinquent with a *current* outstanding balance of $87,000 or more, Ex. 7, based on the "unspoken but unmistakable premise . . . that plaintiffs' debt is still valid, due, and owing—in a word, enforceable." *Alborzian*, 235 Cal. App. 4th at 37.

The FTC defines "accuracy" for purposes of the furnisher compliance under the FCRA to require that the reporting, among other things, reflect "the terms of and liability for the account or other relationship" and "the consumer's performance and other conduct with respect to the account . . . ." 16 C.F.R. § 660.2(a). Here, Nationstar's reporting did not reflect Plaintiffs' "liability for the account" or their "performance and other conduct with respect to the account." Under Section 580b and *Brown* , Plaintiffs had no "liability" to pay the Nationstar account at the time each report was made. Yet, Nationstar portrayed them as *currently* 180 days delinquent, still liable to pay $87,000 or more.

The principle that a current zero balance must be reported when the borrower has no personal liability for a debt is also well established in FTC reporting standards that must be followed after a bankruptcy discharge. The FTC's standard for reporting debts discharged in a Chapter 7 bankruptcy states that a credit report may "include an account that was discharged in bankruptcy . . . as long as it reports a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt." *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, Fed. Trade Comm'n 40 (July 2011) at p. 68, available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf  (as of June 7, 2020); *see also, e.g.*, *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1108 (E.D. Cal. 2017) (post-discharge reporting based on pre-bankruptcy contract terms "render[ed] the disputed information inaccurate and materially misleading.")

The reporting of an incorrect *current* loan balance (*e.g.*, $87,000, when zero is owed) is patently inaccurate. *Abdelfattah v. Carrington Mortg. Servs. LLC*, No. C-12-04656-RMW, 2013 U.S. Dist. LEXIS 17517, at *9 (N.D. Cal. Feb. 7, 2013)(lender's report of outstanding loan

balance without crediting foreclosure sale proceeds was inaccurate); *Bondi v. Great S. Bank*, No. 16-cv-1282 (PAM/BRT), 2017 U.S. Dist. LEXIS 34113, at *1-2 (D. Minn. Mar. 9, 2017) (where bank agreed to accept a quarter of the outstanding balance to settle the account, its continued reporting of a balance of $54,000 was inaccurate); *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1303 (11th Cir. 2019) (FCRA furnisher claim upheld where the lender continued to report the borrower as owing a balloon payment after the parties entered a settlement requiring the lender to report a second mortgage as having a zero balance); *Yourke v. Experian Info. Sols., Inc.*, No. C 06-2370 CW, 2007 U.S. Dist. LEXIS 47558, at *15 (N.D. Cal. June 20, 2007)("Experian's continued inclusion of the liens as released but with the full amount for which they were originally filed could be viewed as misleading").

Consistent with these reporting principles, in *Kuns v. Ocwen Loan Servicing, Ltd. Liab. Co.*, 611 F. App'x 398, 399 (9th Cir. 2015), the Ninth Circuit held that Ocwen, a loan servicer, had inaccurately reported a deficiency balance on a California second mortgage under the CCRAA.  Plaintiff had a purchase money loan on a home that was foreclosed and Ocwen, like Nationstar, continued to report the full deficiency balance from the foreclosure sale.  Kuns alleged "that Ocwen's reporting of the deficiency, *without being accompanied by additional information to indicate Kuns' lack of personal liability, violated its obligation under the CCRAA to not report*" incomplete or inaccurate information. *Id.* at 399 (emphasis added). The Ninth Circuit found that this allegation stated a claim under CCRAA § 1785.25.  *Id.* at 400.

As in *Kuns*, Plaintiffs' CCRAA claim does turn on whether the loan debt was "extinguished" or continued to exist.  Plaintiffs do not contend that Nationstar was barred from reporting *historical* facts—the existence of the loan, the foreclosure, or past payment delinquencies.  That is valid, reportable past credit history.  Instead, Plaintiffs' claim is that if Nationstar reported the loan, completeness and accuracy required it to report the *current* outstanding balance as zero and/or otherwise to qualify the report to reflect that Plaintiffs were *currently* within their legal rights in not paying off the deficiency balance.  *Kuns* so held.

### b. Nationstar's Reporting Was Misleading so as Likely to Adversely Affect Credit Decisions.

Even if Nationstar's reporting were not "patently incorrect," summary judgment must be denied because there are genuine issues of material fact under the alternative *Gorman* standard—whether Nationstar's reporting "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman,* 584 F.3d at 1163.

Reporting Plaintiffs' mortgage as currently 180 days past due with a current outstanding balance of $87,000 or more was misleading so as likely to adversely affect credit decisions. The evidence is undisputed that Nationstar's reporting was a "major derogatory" on Plaintiffs' credit reports.  Kemp Dec. ISO MSJ (ECF. No. 76-3) Ex. "E" at 7 n. 1. (Ulzheimer Report).  According to Mr. Ulzheimer, a "major derogatory" includes "anything that is *currently* past due, historically 90 days past due or worse ...."  *Id.* (emphasis added).  It is also undisputed that a major derogatory negatively affects a consumer's payment history, although the exact effect is in dispute.  *Id.* at p. 7.

Nationstar's major derogatory reports were misleading because they informed prospective creditors that Plaintiffs currently owed a balance of $87,000 or more and that they were currently 180 days delinquent in payments, credibly leading creditors to believe that Plaintiffs were a higher credit risk. Hendricks Dec. ¶ 16.  This reporting was likely to adversely affect credit decisions.  *Id.* ¶¶ 16-28.

*Gorman* itself recognizes that "a consumer's failure to pay a debt that is not really due 'does not reflect financial irresponsibility.'" 584 F.3d at 1163, quoting *Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 150 (4th Cir. 2008); *Yourke* , 2007 U.S. Dist. LEXIS 47558, at *15 (N.D. Cal. June 20, 2007)("Experian's continued inclusion of the liens as released but with the full amount for which they were originally filed could be viewed as misleading").

Yet, financial irresponsibility is exactly what Nationstar's reports would communicate to creditors who pull and consider plaintiffs' reports for credit or tenancies.  Nationstar's major derogatory warped prospective creditors' decisions by failing to disclose that, regardless of Plaintiffs' payment history—which could be reported—the amount Plaintiffs *currently* had to pay was zero.  That reporting could be expected to prompt a creditor to extend credit it would

1   otherwise deny out of concern that Plaintiffs would be subject to collection action by Nationstar.

2   Hendricks Dec. ¶ 16.

3

4           **c.  Industry Standard Metro 2 Reporting Standards Confirm the Inaccuracy
          and Incompleteness of Nationstar's Reports.**

5        Industry-standard "CDIA" or "Metro 2" guidelines provide explicit standards for

6   mortgage servicers for reporting deficiencies after foreclosures and short sales.  Hendricks Dec.

7   ¶¶ 4-8; Ulzheimer Report at p. 5 (Metro 2 coding "is the industry standard"). Nationstar purports

8   to follow Metro 2 standards in reporting mortgages to the credit reporting agencies.  Ex. 8 at

9   143:4-6.   Yet Nationstar failed to follow the Metro 2 standard requiring it to report zero balances

10  after foreclosures when the borrower is not responsible to pay a deficiency balance. Ex. 7; Ex. 8

11  at 137:2-22 & Ex. 9; 138:1-139:3, 139:4-140:25, 141:3-12, 143:4-23, 144:16-22, 151:7-13,

12  151:24-152:10.

13       The Metro 2 manual guidance on reporting after a foreclosure[9] states:

14       If the consumer is not responsible for the remaining balance on the account or
         there is no deficiency balance, report Account Status 94 and a Current Balance and

15       Amount Past Due of zero. Report the Date Closed as the date the foreclosure was
         completed.

16                               \*\*\*\*\*

17       For credit reporting purposes, do <u>not</u> report Account Status Code 97 (Charge-off)
         after Account Status 94 has been reported.

18  Hendricks Dec. ¶¶ 7-12; Levy Dec. Ex. 1 (emphasis in original).

19       Courts may consider Metro 2 standards in determining whether credit reporting is

20  incomplete or inaccurate.  *See e.g.*, *Aulbach v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1281,

21  1287 (N.D. Cal. 2017).  A furnisher's non-compliance with Metro 2 standards is evidence of

22  incompleteness or inaccuracy, provided that the deviation from the standards renders the

23  reporting misleading in such a way and to such an extent that it could be expected to adversely

24  affect credit decisions.   *See, e.g.*, *Nissou-Rabban v. Capital One Bank (USA), N.A.*, No.

25

26  ───────────────
    [9] A similar "zero reporting" standard applies to short sales.  Ex. 2.  Contrary to Mr. Loll's

27  declaration, Nationstar did not report all short sale deficiencies with a zero balance.  Ex. 8 at
    139:4-140:12.

28

1   15cv1675 JLS (DHB), 2016 U.S. Dist. LEXIS 81373, at *16 (S.D. Cal. June 6, 2016); *Tanimura*

2   *v. Experian Info. Sols., Inc.,* 2017 WL 1354767 (N.D. Cal. Apr. 13, 2017).

3       Here, Nationstar's deviation from Metro 2 standards rendered its reporting misleading in

4   such a way and to such an extent that it could be expected to adversely affect credit decisions.

5   Hendricks Dec. ¶¶ 16-28.

6       In summary, Plaintiffs have presented evidence to establish that Nationstar's reporting of

7   a current delinquency and a large current past-due balance was a "major derogatory."  This report

8   was patently inaccurate and so misleading that it was likely to adversely affect credit decisions.

9   Nationstar failed to follow the industry-standard guidance for reporting deficiencies after

10  foreclosures.  Genuine issues of fact preclude summary judgment.

11      **d.  The Case Law Supports Plaintiffs, Not Nationstar**

12      Contrary to Defendants' claim, all of the pre-*Kuns* courts addressing CCRAA furnisher

13  liability for reporting deficiencies subject to the California anti-deficiency laws looked past the

14  "extinction of the debt" argument and *upheld* the claims, on reasoning similar to the above.

15      Nationstar fails to point out that in *Johnson v. Wells Fargo Home Mortg., Inc.*, No. EDCV

16  13-01044-VAP (OPx), 2013 U.S. Dist. LEXIS 185345 (C.D. Cal. Sep. 13, 2013), even though the

17  court recognized that section 580b does not extinguish the debt, it went on to hold that "failing to

18  report that a debt is not subject to a deficiency judgment is also potentially misleading.

19  Accordingly, Plaintiff's claim that Defendant violated the FCRA and CCRAA by providing

20  inaccurate and incomplete information to CRAs survives the Motion."  *Id*. at *23.

21      The *Johnson* decision prompted the court in *Murphy* four months after the opinion

22  Nationstar cites to *uphold* the CCRAA claim.  M*urphy v. Ocwen Loan Servicing, LLC*, No. 2:13-

23  cv-555-TLN-EFB, 2014 U.S. Dist. LEXIS 86640, at *22-24 (E.D. Cal. June 20, 2014) (following

24  *Johnson*; "after conducting a more searching review of the legislative history of Cal. Civ. Proc.

25  Code § 580b and considering the parties' new arguments focused on the misleading nature of

26  furnishing information about a debt for which no deficiency judgment can be obtained, the Court

27  finds Plaintiffs state a claim under the FCRA and the CCRAA"); *Abdelfattah*, 2013 U.S. Dist.

28  LEXIS 17517, at *9, also cited by Nationstar, supports Plaintiffs' position, upholding the

1   CCRAA claim based on the reporting of an incorrect loan balance after a foreclosure sale.

2       *Prianto v. Experian Info. Sols., Inc.*, No. 13-cv-03461-TEH, 2014 U.S. Dist. LEXIS

3   94673, at *22 (N.D. Cal. July 10, 2014), did not address furnisher liability under the CCRAA,

4   only a credit reporting agency's liability under the FCRA [10]

5       *Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009 U.S. Dist. LEXIS 81850, at

6   *22 (N.D. Cal. Sep. 9, 2009) is pre-*Kuns* and a debt collection case, not a credit reporting case.

7   The decision was superseded by *Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009

8   U.S. Dist. LEXIS 122775, at *20 (N.D. Cal. Dec. 22, 2009)("It is plausible that the least

9   sophisticated debtor could be misled by a letter stating that her debt is 'due and owing' when that

10   debt is subject to California's anti-deficiency law, and the letter does not advise the debtor as to

11   the significance of section 580b").

12       *Vargas v. Bank of Am., N.A.*, No. 12-cv-2247-L(MDD), 2013 U.S. Dist. LEXIS 49222, at

13   *11 (S.D. Cal. Apr. 2, 2013) was a pre-*Kuns* defamation case, not a credit reporting case at all.

14       The Ninth Circuit in *Kuns* validated the reasoning of these cases and rejected the

15   arguments Defendants now raise as dispositive of accuracy in credit reporting.

16       Likewise, in *Gray v. Ocwen Mortg. Servicing, Inc.*, No. 18-cv-01864-JD (N.D. Cal.), the

17   Court has now ruled on the ground that "it remains the case that Section 580b does not extinguish

18   the existence of the debt itself nor speak to any credit reporting requirements for purchase money

19   loans or any delinquencies on such loans."  *Gray*, ECF No. 47, filed 03/30/20.  In contrast with

20   *Gray*, Plaintiffs do not base their claims on "extinction of the debt," but instead on *Brown v.*

21   *Jensen* and its progeny (*see* p. 13, *supra*), and have presented a fully developed evidentiary and

22   legal record showing non-compliance with CCRAA reporting standards (*see* pp. 14-18, *supra*). [12]

23

24   [10]   *Prianto* settled after oral argument in the Ninth Circuit, so there was no appellate decision.
25   The panel seemed poised, however, to hold that Experian had violated the accuracy requirement
    of the FCRA.  Oral argument video available at https://youtu.be/vRSbfoB2kik (as of June 7,
26   2020).

27   [12] Likewise, the post-*Kuns Singh v. Wells Fargo Bank*, No. 2:15-cv-2664-JAM-EFB PS, 2017
    U.S. Dist. LEXIS 131726, at *10 (E.D. Cal. Aug. 17, 2017), held only that the "unsatisfied
28   portion of the debt *was not extinguished* after the foreclosure of the subject property, and

**7. Plaintiffs Suffered Damages as a Result of Defendants' CCRAA Violations.**

If the Court follows *Trujillo v. First Am. Registry, Inc.*, 157 Cal. App. 4th 628 (2007), Plaintiffs have "suffered damages" for purposes of subsection (a) of section 1785.31, which is all that *Trujillo* requires.  *See* Reply ISO Class Cert. (No. 77) at pp. 2-3.  Plaintiffs suffered actual damages resulting from Nationstar's CCRAA violations, including emotional distress; costs incurred in attending in-person meetings with counsel; and interest payments on Plaintiff Georgia Toland's car loan resulting from her inability to obtain a 0% rate.  Ex. 15 at 56:7-18, 57:25-58:10, 61:13-20; 63:21-64:5, 65:9-66:1; Ex. 14 at 71:21-72:17, 78:2-8, 81:9-14 (emotional distress); Ex. 15 at 69:2-5; Ex. 14 at 88:10-16 & Toland Dec. (costs related to meetings with counsel); Ex. 14 at 64:22-67:1; 88:23-89:21 (car loan).  Plaintiffs additionally incurred costs in engaging a credit repair service to dispute to the inaccuracy of Nationstar's reporting.  Ex. 15 at 31:3-17; Ex. 19.

"Actual damage" for FCRA and CCRAA violations includes pecuniary damage and "recovery for emotional distress and humiliation." *Guimond*, 45 F.3d at 1333 (9th Cir. 1995) (collecting cases); *Fair v. Experian Info. Sols., Inc.*, No. C 16-5712 CW, 2017 WL 1164225, at \*4 (N.D. Cal. Mar. 29, 2017) (plaintiff's costs in obtaining copies of his credit report and copying and faxing evidence regarding his disputes to the major credit reporting agencies "constitute[d] cognizable economic damages for FCRA purposes"); *Montgomery v. Wells Fargo Bank*, No. C12-3895 TEH, 2012 WL 5497950, at \*6 (N.D. Cal. Nov. 13, 2012) (Henderson, J.) (cognizable claim for actual damages based on "reviewing credit reports, expenses related to travel to and from her attorney's office and sending demand letters, ongoing impairment of her credit score, difficulties in seeking credit and necessary products and services, and pain and suffering"); *Calvillo v. Experian Info. Sols., Inc.*, No. 2019 CV 00277 RFB NJK, 2020 WL 1549574, at \*2 (D. Nev. Apr. 1, 2020) (plaintiff made a claim for actual damages based on "out-of-pocket transportation costs and lost time, stress and anger").

therefore the reporting of the remaining debt fails to support a claim upon which relief may be granted."  (Emphasis added.)

1        Defendants cite a case holding that "expenses incurred merely to notify [CRAs] of

2   inaccurate credit information, and not to force their compliance with any specific provision of the

3   statute, cannot be compensable as 'actual damages' for a violation of the FCRA." *Burrows v.*

4   *Experian Info. Sols., Inc.*, No. 16-CV-06356-PJH, 2017 WL 1046973, at *11 (N.D. Cal. Mar. 20,

5   2017) (quoting *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995)). *Casella*

6   and its progeny are distinguishable, however, because the claim was not against a furnisher under

7   the CCRAA.  The reasoning relied on the FCRA's requirement of a dispute process, which

8   "contemplates" *pre-violation* expenses "incurred merely to notify [CRAs] of inaccurate credit

9   information." *Id.* (citing *Casella*, 56 F.3d at 474). By contrast, by reporting Plaintiffs' loan

10  Nationstar was already violating the CCRAA furnisher reporting statute, necessitating Plaintiffs'

11  credit repair expenses. Unlike in *Casella*, Plaintiffs' credit repair expenses resulted from

12  Nationstar's violation.  The well-reasoned *Fair* and *Montgomery* cases accord with general

13  damages principles and should be followed.

14      **8.  Genuine Issues of Material Fact Preclude Summary Judgment on Whether
            Nationstar Willfully Violated the CCRAA.**
15

16      Willfulness is established by "careless disregard whether or not one has the right so to act"

17  or "actions in 'reckless disregard' of the law." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57,

18  127 S. Ct. 2201, 2208 (2007).  "The statutory requirement of willfulness does not require proof of

19  an intent to cause harm, but only an intent to fail to comply with the FCRA." *Taylor v. First*

20  *Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1110 (N.D. Cal. 2016).

21      Reckless disregard of the CCRAA credit reporting standard can be established by showing

22  that Nationstar's interpretation of section 1785.25(a) was objectively unreasonable, coupled with

23  proof that Nationstar "ran a risk of violating the law substantially greater than the risk associated

24  with a reading that was merely careless." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 711

25  n.1 (9th Cir. 2010), citing and quoting *Safeco*, 551 U.S. at 69; *Cortez v. Trans Union, LLC*, 617

26  F.3d 688, 722 (3d Cir. 2010).

27      "Courts in this circuit have found that '[w]illfullness under the FCRA is generally a

28  question of fact for the jury.'" *Taylor*, 207 F. Supp. 3d at 1110; *Hawkins v. S2Verify LLC*, No. C

1    15-03502 WHA, 2016 U.S. Dist. LEXIS 3224, at *9 (N.D. Cal. Jan. 11, 2016)("In FCRA cases,

2    "[t]he reasonableness of the procedures and whether the agency followed them will be jury

3    questions in the overwhelming majority of cases", quoting *Guimond*, 45 F.3d 1329 at 1333);

4    *Heaton v. Socal Finance, Inc.*, No. 14-cv-05191-TEH, at *11 n. 5 (N.D. Cal. Nov. 4, 2015) (Dkt.

5    94-1) ("The mixed nature of the willfulness inquiry – with issues of law and fact intertwined – is

6    the precise reason the question is best reserved for a finder of fact.")

7            As a threshold matter, Nationstar fails to carry its initial burden.  It has not produced any

8    evidence proving Nationstar's actual state of mind—what Nationstar' actually believed the proper

9    credit reporting standard was and why its thought its reporting was accurate. Mr. Loll's

10   declaration addresses Nationstar's protocols, but fails to explain why Nationstar believed it could

11   report Plaintiffs' loan as it did.

12           Evidence of Defendants' subjective rationale is needed to establish the "objective

13   reasonableness" of the statutory interpretation *Nationstar actually relied on*:

14           Here, there is no evidence that JRK actually adopted the interpretation of *§
             1681b(b)(2)* that it has urged throughout this litigation when it violated the
15           statute. Instead, the record shows that JRK, uninformed by any analysis, simply
             used a form that had been provided to it by a third-party background check
16           vendor…. In sum, there is nothing in the record from which the Court could
             infer that anyone at JRK made a decision as to what the word "solely" in *§
17           1681b(b)(2)* requires …. Therefore, the "objective reasonableness" analysis
             called for by Safeco does not apply in this case.
18

19   *Milbourne v. JRK Residential America, LLC*, 202 F. Supp. 3d 585, 592 (E.D. Va. 2016); *Heaton*,

20   *supra*, at *11 n. 4.

21           Further, as shown above, there is ample evidence that Nationstar knew or was on

22   unmistakable notice of the foreclosure sale when it reported Plaintiffs' balance as delinquent.

23   Before it even started reporting, Nationstar had obtained BPO and credit reports clearly showing

24   the May 2012 foreclosure sale.  *See* pp. 10-11, *supra*.  Then, a year and a half after obtaining the

25   reports, Nationstar unlawfully referred Plaintiffs' loan to Veripro to collect an uncollectible

26   deficiency.

27           The Courts have found similar conduct by loan servicers willful:

28           [T]he Court finds that there is a fact question as to when Ocwen became aware of

1
2
3
4

the fact that the Plaintiff was no longer personally liable for the second mortgage it agreed to service.  In addition, if Ocwen knew that Plaintiff had filed for bankruptcy, but did not follow up to determine if the debt had been discharged, a reasonable jury could find that Ocwen willfully violated Plaintiff's FCRA rights when it pulled Plaintiff's credit history when it knew or should have known that the debt was discharged and that Ocwen would not have a permissible purpose to pull the report.

5   *Barton v. Ocwen Loan Servicing LLC*, No. 12-162 (MJD/JJG), 2013 U.S. Dist. LEXIS 153276, at

6   *14-15 (D. Minn. Oct. 25, 2013) (denying summary judgment ); *see also Daugherty v. Ocwen*

7   *Loan Servicing, LLC*, 701 F. App'x 246, 256 (4th Cir. 2017) (verdict for punitive damages

8   affirmed; "the jury could have concluded that it was reckless for Ocwen, after having received the

9   '007' dispute verification requests, not to investigate and correct the erroneous information

10  regarding Daugherty's current balance, past due amounts, last payment date, actual payments, and

11  foreclosure status."); *Fischer v. SunTrust Mortg. Inc.*, No. CV-15-02075-PHX-JJT, 2016 U.S.

12  Dist. LEXIS 62285, at *7 (D. Ariz. May 10, 2016).

13       Nationstar's interpretation of section 1731.25(a)—that reporting of a current unpaid

14  balance after a foreclosure sale, with a 180-day delinquency flag, even if the borrower is fully

15  protected by section 580b(a)(3) against having to pay any of it— is "complete and accurate" is

16  manifestly unreasonable.  Unlike *Safeco*, which was "not a case in which the business subject to

17  the Act had the benefit of guidance from the courts of appeals or the Federal Trade Commission

18  (FTC) that might have warned it away from the view it took" (*Safeco*, 127 S. Ct. at 2216),

19  Nationstar had both.

20       In May 2015, while Nationstar was still reporting Plaintiffs' mortgage monthly,  the Ninth

21  Circuit in *Kuns* issued a red flag warning to the mortgage servicing industry not to report

22  deficiency balances on loans subject to California anti-deficiency protection, and undercut any

23  reliance on cases that may have suggested otherwise.  Moreover, as previously explained, when

24  Nationstar began reporting Plaintiffs' loan, there were no cases holding that a furnisher may

25  report a large current balance with a current 180-day delinquency status even when the borrower

26  is fully exonerated from all personal liability.  All cases held otherwise and, in spite of *Kuns*,

27  Nationstar continued to so report Plaintiffs' loan.

28       Although *Kuns* is unpublished, the Ninth Circuit's pronouncement was at the time and

1  remains more authoritative than the unreported, non-binding District Court cases Defendants cite

2  (inappositely) to justify Nationstar's reporting.  *See* pp. 18-19, *supra*.  *Kuns* has been cited in

3  seven later cases, without criticism.  At a minimum, *Kuns* undercuts any claim that Nationstar

4  could justify its reporting at the time based on current case law.

5          The FTC rules cited above provided Nationstar further reporting guidance, which it did

6  not follow.  *See* p. 14, *supra*.  The Metro 2 standards, which Nationstar subscribes to,  expressly

7  incorporate the FTC's "accuracy" definition for furnishers like Nationstar.  Ex. 3.

8          Finally, the Metro 2 reporting standards expressly state that where the borrower is not

9  liable to pay a deficiency after a foreclosure sale, a zero balance must be reported and a "charge

10  off" cannot be.  *See* pp. 17-18, *supra*.

11          The trier of fact could reasonably infer from this evidence, reinforced by the testimony of

12  Mr. Hendricks, that Nationstar reported Plaintiffs' mortgage in "careless disregard whether or not

13  one has the right so to act" or in "reckless disregard" of its obligation under the CCRAA to make

14  a complete and accurate credit report.

15          **9.  Defendants' UCL Arguments Lack Merit.**

16          Plaintiffs' UCL claim based on unlawful business practices is predicated on Defendants'

17  violations of the Rosenthal Act/FDCPA and the CCRAA.  Because summary judgment should be

18  denied on Defendants' challenges to those claims, summary judgment should be denied on the

19  UCL unlawful prong claims.

20          Plaintiffs' UCL claim based on deceptive practices is governed by the objective "likely to

21  deceive standard."  It is only necessary to show that "members of the public are likely to be

22  deceived."  *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 309 (2020).  No

23  proof of actual deception, reliance or injury need be shown.  *In re Tobacco II Cases*, 46 Cal. 4th

24  298, 320 (2009).

25          In their summary judgment motion, Defendants do not contest that Veripro's collection

26  letters violated the Rosenthal Act because "a hypothetical least sophisticated debtor would likely

27  have been misled."  *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1117-18 (9th Cir. 2014).

28  They similarly submit no evidence or argument to carry their burden on the UCL deceptive prong

1   and false advertising claims.  Their bald assertion that "Plaintiffs cannot show defendants'

2   practices or advertising were likely to deceive the public" (Mot. at 23:11-12) ignores their burden

3   of proof on summary judgment and is unsupported by any evidence negating any likelihood to

4   deceive.

5   Plaintiffs have a valid remedy in this UCL representative action to seek restitution on

6   behalf of others, even if they did not pay Veripro.  All that is required for Plaintiffs to "pursue

7   representative claims for relief on behalf of others" is their own personal standing under Business

8   & Professions Code section 17203, which defendants have not challenged.  *Tobacco II Cases*, 46

9   Cal. 4th at 316.

10   Plaintiffs are also entitled to the UCL remedy of public injunctive relief against

11   Defendants to cease their violations of the fair debt collection and credit reporting laws.  *McGill*

12   *v. Citibank, N.A*., 2 Cal. 5th 945, 959 (2017) (any person with statutory standing may request

13   public injunctive relief).  Because a public injunction is to remedy a public wrong, not merely to

14   resolve a private dispute, the remedy is unwaivable.  *Id*. at 962 (any waiver of "the statutory right

15   to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid

16   and unenforceable under California law").  Because the public injunction remedy is for a public

17   purpose, Plaintiffs need not show any "ongoing conduct" *as to them* to support a public injunction

18   under the UCL.  *Id.* at 958 ("[T]here is no hard-and-fast rule that a party's discontinuance of

19   illegal behavior makes injunctive relief … unavailable. 'While voluntary cessation of conduct

20   may be a factor in a court's exercise of its equitable jurisdiction to issue an injunction, it is not

21   determinative'", quoting *Robinson v. U-Haul Co. of California* 4 Cal.App.5th 304, 315(2016)).

22   Dated:  June 8, 2020                                    _____/s/ Arthur D. Levy_____
                                                             Arthur D. Levy
23                                                           ARTHUR D. LEVY (SB # 95659)
                                                             GINA DI GIUSTO (SB #293252)
24                                                           NATALIE LYONS (SB #293026)
                                                             HOUSING AND ECONOMIC RIGHTS
25                                                           ADVOCATES

26                                                           BRYAN KEMNITZER (SB # 066401)
                                                             KRISTIN KEMNITZER (SB # 278946)
27                                                           KEMNITZER, BARRON & KRIEG, LLP

28                                                           Attorneys for Plaintiffs