HOUSING AND ECONOMIC RIGHTS ADVOCATES
ARTHUR D. LEVY          Bar No. 095659
GINA DI GIUSTO          Bar No. 293252
P.O. Box 29435
Oakland, CA  94604
Telephone:  (415) 702-4551
Facsimile:  (415) 814-4080
arthur@yesquire.com
gdigiusto@heraca.org

KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER          Bar No. 066401
KRISTIN KEMNITZER        Bar No. 278946
42 Miller Ave., 3rd Floor
Mill Valley, CA  94941
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1900
bryan@kbklegal.com
kristin@kbklegal.com

Attorneys for Plaintiffs TAQUELIA WASHINGTON TOLAND AND GEORGIA TOLAND
Individually and on Behalf of All Others Similarly Situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUELIA WASHINGTON TOLAND and GEORGIA TOLAND, individually and on behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; VERIPRO SOLUTIONS INC., a Delaware corporation, and DOES 1 through 20, <br><br> Defendants. <br> _____/ | **Case No. 3:17-cv-02575-JD** <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND SERVICE AWARDS** <br><br> **Date: April 21, 2022** <br> **Time: 10:00 a.m.** <br> **Courtroom 11, 19th Floor** <br> **Hon. James Donato** <br><br> Complaint Filed:  March 24, 2017 |

## **TABLE OF CONTENTS**

**NOTICE OF MOTION** 1

**MEMORANDUM OF POINTS & AUTHORITIES** 1

I.    GENERAL DESCRIPTION OF CLASS COUNSEL'S SERVICES TO THE CLASS    1

II.   LITIGATION CHRONOLOGY DETAILING SERVICES RENDERED    2

    A.    Class Counsel Sought and Obtained Discovery Necessary to Represent the Class    2

    B.    Class Counsel Retained and Prepared a Credit Reporting Expert in Support of the Class Case    4

    C.    Class Counsel Intervened in the *McCoy* Class Action to Protect the Class    5

    D.    Class Counsel Fully Briefed Plaintiffs' Motion for Class Certification and their Opposition to Defendants' Motion for Summary Judgment    5

    E.    Class Counsel Engaged in Appropriate Settlement Processes, Negotiated the Settlement, and Is Taking the Necessary Steps to Obtain Preliminary and Final Settlement Approval    6

III.  REQUEST FOR AWARDS OF ATTORNEY'S FEES BASED ON THE LODESTAR METHOD AND EXPENSES    7

    A.    Application of the *Kerr* factors    9

    B.    Application of the *Bluetooth* Factors    13

    C.    Class Counsel Also Request an Award of $41,000 in Expenses Incurred in Prosecuting this Litigation and Securing the Settlement for the Class    14

IV.   CLASS REPRESENTATIVES REQUEST SERVICE AWARDS OF $5,000 EACH    14

V.    CONCLUSION    15

## **TABLE OF AUTHORITIES**

**FEDERAL STATUTES**

15 U.S.C. § 1692k(a)(2)(B)    12

15 U.S.C. § 1692k(a)(3)    7

15 U.S.C. § 1692k(b)    12

Fed. R. Civ. P. 30(b)(6)    1,3

1

**FEDERAL CASES**

2   *Abdelfattah v. Carrington Mortg. Servs.* LLC, No. C-12-04656-RMW, 2013 U.S. Dist.   11
    LEXIS 17517 (N.D. Cal. Feb. 7, 2013)

3   *Caudle v. Bristow Optical Co.*, 224 F.3d 1014 (9th Cir. 2000)   8

4   *Covillo v. Specialtys Cafe*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)   15

5   *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 2001)   8

6   *Gray v. Ocwen Mortg. Servicing, Inc.*, No. 18-cv-01864-JD, 2019 U.S. Dist. LEXIS   11
    121004 (N.D. Cal. July 19, 2019)
7

8   *Gray v. Ocwen Mortg. Servicing, Inc.*, 840 Fed. App'x 185 (9th Cir. 2021)   11

9   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)   7

    *Herrera v. LCS Financial Services Corp.*, 274 F.R.D. 666 (N. D. Cal. 2011)   10
10

11  *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016)   15

12  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)   15

13  *Johnson v. Wells Fargo Home Mortg., Inc.*, No. EDCV 13-01044-VAP, 2013 U.S.   11
    Dist. LEXIS 185345 (C.D. Cal. Sep. 13, 2013)

14  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935   7,13
    (9th Cir. 2011)
15

16  *Kuns v. Ocwen Loan Servicing, Ltd. Liab. Co.*, 611 F. App'x 398 (9th Cir. 2015)   10

17  *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996)   8

18  *Murphy v. Ocwen Loan Servicing, LLC*, No. 2:13-cv-555-TLN-EFB, 2014 U.S. Dist.   11
    LEXIS 86640 (E.D. Cal. June 20, 2014)

19  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)   15

20  *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895 (9th Cir. 1995)   8

21  *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)   8

22  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F. 2d 403 (9th Cir. 1990)   8

23  **CALIFORNIA STATUTES**

24  Civil Code §580b(a)(3)   11

25  Civil Code §580b(c)   11

26  Civil Code §580b(d)   11

27  Civil Code §§1785 *et seq.*   7

28  Civil Code §1785.31(a)(2)(B)   2,11

Civil Code §1785.31(d)                                                                          8

Civil Code §1785.31(f)                                                                          8

Civil Code §§1788 *et seq.*                                                                     7

Civil Code §1788.17                                                                          8,12

Code of Civil Procedure §1021.5                                                                 8

**<u>CALIFORNIA CASES</u>**

*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628                         11

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, pursuant to this Court's Order Re Preliminary Approval of Class Settlement (Dkt. No. 125), on April 21, 2022 at 10:00 a.m., or on such other date and time the Court may set, Plaintiffs and their counsel or record will and hereby do move for Awards of Attorneys' Fees and Expenses and Class Representative Service Awards. This motion is based on this Notice, the accompanying Memorandum and Declarations of Arthur D. Levy, Kristin Kemnitzer, Georgia Toland, and Taquelia Washington Toland, all other papers filed and proceedings held in this action, and such other evidence and matters as may be presented prior to or at the hearing.

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.   GENERAL DESCRIPTION OF CLASS COUNSEL'S SERVICES TO THE CLASS**

Throughout this litigation, which dates nearly five years to March 2017, Plaintiffs have been represented by Arthur Levy, Kemnitzer, Barron & Krieg, LLP, and Housing and Economic Advocates. Arthur Levy (41 years' experience) and Kristin Kemnitzer (ten years' experience) served as principal counsel for Plaintiffs in this case.

This was hard fought litigation from the outset, requiring significant data discovery that triggered multiple data discovery disputes, thorny legal issues (which have been fully briefed on the pending Motion for Class Certification and Motion for Summary Judgment), one mediation, and two mandatory settlement conferences. Class Counsel performed the following services to the Class:

- Pursued document and data discovery to identify and define the Class, including enforcement via several meet and confers and three successful discovery dispute letters to the Court;

- Analyzed defense discovery and took two Fed. R. Civ. P. 30(b)(6) depositions from defense representatives in Dallas, Texas. These depositions, and the prior discovery and discovery enforcement efforts taken to prepare for them, were crucial in enabling Class Counsel to prepare the Motion for Class Certification, to oppose defendants' Motion for Summary Judgment, and to prepare the case for settlement and possible trial.

- Retained and presented a nationally-recognized credit reporting expert, Evan Hendricks, to give his report and testify, defended his deposition, and took the deposition of the defense credit reporting expert.

- Prepared and filed a timely Motion for Class Certification, including full briefing.

- Timely opposed defendants' Motion for Summary Judgment and *Daubert* motion to exclude Plaintiff's credit reporting expert from testifying, including full briefing.

- Protected this case and this Class by filing and successfully litigating objections to a potentially preemptive class settlement in *McCoy v. Nationstar*, enabling this case to go forward to obtain a settlement yielding benefits for this Class above and beyond benefits that were available to some Class members under the *McCoy* settlement;

- Engaged in a private ADR Services mediation process and the ultimately successful two mandatory settlement conferences before Magistrate Judge Ryu;

- Negotiated the Settlement Agreement and associated Claim Form and Settlement Notice for this Settlement; and

- Prepared the Preliminary Approval Motion, responded to the Court's changes and questions regarding the Settlement, and are continuing to perform under the Court's Preliminary Approval Order, including coordinating with the Settlement Administrator to assure execution of the notice plan, and filing this motion.

## II.  LITIGATION CHRONOLOGY DETAILING SERVICES RENDERED

Plaintiffs filed this case in Alameda County Superior Court on March 24, 2017. On May 4, 2017, Defendants removed the case to this Court based on CAFA jurisdiction. (Dkt. No. 1.) Plaintiffs responded to the removal by filing a remand motion, raising the issue of the $5.0 million amount in controversy. (Dkt. No. 12.) The Court denied the motion based on the punitive damages allegation under the California Consumer Reporting Agencies Act (the "CCRAA"), Civil Code § 1785.31(a)(2)(B). (Dkt. No. 37.)

### A.  <u>Class Counsel Sought and Obtained Discovery Necessary to Represent the Class</u>

In the remand proceeding, defendants asserted that they could not identify Class members based on data mining algorithms but would have to conduct manual file reviews. (Dkt. No. 35-1,

¶ 6.) To test this assertion and to prepare for depositions, Plaintiffs served document and data requests and interrogatories on defendants. (Levy Dec. ¶ 10.) These were served in August 2018. (*Id.*)

Defendants declined to provide the requested class data, and instead provided data for only 300 potential Class members. (Levy Dec. ¶ 11.) Class counsel met and conferred with defense counsel in an effort to resolve the data disputes, including an in-person meeting on March 1, 2019, without success. (*Id.*) On March 6, 2019, Class Counsel submitted a discovery dispute letter on the data issues to the Court. (Dkt. No. 48.) The Court held a telephone discovery conference on April 9, 2019, at which the Court ruled that Plaintiffs were not required to accept defendants' list of 300 but were entitled to pursue data discovery from defendants to develop methods of identifying the Class and to assure a complete Class list. (Dkt. Nos. 51, 53.)

After the telephone conference with the Court, Class Counsel again attempted to meet and confer with defendants to resolve the data issues and obtain the data necessary to assess Class identification and definition issues. (Levy Dec. ¶ 12.) When this again proved unsuccessful, on May 6, 2019, Plaintiffs sought a second discovery conference with the Court. (Dkt. No. 54.) The Court held a second discovery conference on June 6, 2019, at the end of which the Court ordered counsel to appear in Court in person on June 10. (Dkt. No. 56.) On June 10, counsel for both sides met in the jury room and reached agreements to resolve the discovery dispute. (Dkt. No. 58.) Under this agreement, defendants agreed to exert best efforts to provide Class Counsel with the requested data by July 1, 2019, based on clarifications and definitions provided by Class Counsel. (Dkt. 59.)

Class Counsel then pursued PMK depositions from defendants. (Levy Dec. ¶ 13.) Because defendants' Fed. R. Civ. P. 30(b)(6) witnesses were located in Dallas, Class Counsel Arthur Levy and HERA Senior Staff Attorney Natalie Lyons traveled to Dallas, where they took the PMK deposition of Phillip Livingston for defendant Veripro on July 24, 2019 and the PMK deposition of A.J. Loll for defendant Nationstar on July 25, 2019. (*Id.*)

Obtaining testimony from these witnesses was key to supporting Plaintiffs' Motion for Class Certification (Dkt. No. 72) and opposing defendants' Motion for Summary Judgment (Dkt.

No. 100). (Levy Dec. ¶ 14; s*ee* Docket No.72-1, Ex. 8, 12; No. 100, Ex. 8, 12.)

Promptly upon returning from Texas, Class Counsel served follow-on document and data requests and interrogatories to pursue new information leads that emerged during the Dallas depositions. (Levy Dec. ¶ 15.) These resulted in further discovery issues and an additional extended meet and confer, including an in-person meeting on September 4, 2019. (*Id*.) Class Counsel submitted a third discovery dispute letter to the Court on September 6, 2019. (Dkt. No. 62.) On November 8, 2019, the Court held a third discovery hearing, at which the Court directed defendants to produce the data fields for loan purpose, occupancy status and cross-reference identifiers between Nationstar's loans and Veripro's accounts for loans recorded as potentially foreclosed or related to a short sale. (Dkt. No. 66.)

Having obtained this data, Class Counsel were able to determine that contrary to defendants' claim that there were only 300 potential Collection Letter Subclass members, there were potentially over twice that many, 677. (Dkt. No. 72-2.) On November 18, 2021, Defendants produced a Collection Letter Subclass List pursuant to Settlement Agreement §2.2(b), containing 377 *actual* Collection Letter Subclass members, over 25% more than the 300 merely *potential* members defendants initially claimed before Plaintiffs' data analysis. (Levy Dec. ¶ 16.)

Meanwhile, defendants served interrogatories, document requests, and requests for admission on Plaintiffs. (Levy Dec. ¶ 17.) Responses were timely served on January 22, 2019. (*Id*.) Defendants thereafter took both Plaintiffs' depositions, on July 18 & 19, 2019. (*Id*.)

**B. Class Counsel Retained and Prepared a Credit Reporting Expert in Support of the Class Case**

Class Counsel turned to preparing for expert reports and depositions per the Court's Case Management Scheduling Order of November 25, 2019. (Dkt. No. 67.) Expert reports were exchanged on September 13, 2019. (Levy Dec. ¶ 18.) Plaintiff submitted one report, from credit reporting expert Evan Hendricks; defendants submitted two expert reports, one from credit reporting expert John Ulzheimer and the other from damages expert Thomas Lambert. Rebuttal expert reports were exchanged on October 3, 2019. (*Id*.) Depositions of experts Hendricks and Ulzheimer were taken remotely on October 11 and 24, and December 10, 2019. (*Id*.)

1    **C.  Class Counsel Intervened in the *McCoy* Class Action to Protect the Class**

2           On November 29, 2019, Plaintiffs learned for the first time of a second class action

3    against Nationstar challenging its mortgage deficiency collection practices under California law,

4    *McCoy v Nationstar Mortgage, LLC*, U.S. Dist. Ct. S.D. Cal. Case No. 15cv2366 DMS. (Levy

5    Dec. ¶ 19.) The *McCoy* Plaintiff and Nationstar had entered a proposed Class Action Settlement

6    that could have preempted this case, at least on the collection claim ground. (*Id.*; *McCoy* Dkt. No.

7    239-1 (Settlement Agreement §§ 1.10; 1.24)[1].)

8           Class Counsel reviewed and analyzed the *McCoy* settlement and on December 2, 2019,

9    filed Objections to protect this case. (*McCoy* Dkt. No. 246.) The Court agreed that the proposed

10   settlement should be modified to exclude this action entirely from the *McCoy* settlement and

11   sustained some of the objections to the class notice plan in *McCoy*. (*McCoy* Dkt. No. 258, pp. 11-

12   12.) Class Counsel appeared at the Final Approval Hearing before Judge Dana Sabraw in San

13   Diego on February 14, 2020. (*McCoy* Dkt. No. 256.) The Court approved the settlement, but

14   excluded this case from the coverage of the *McCoy* settlement. (*McCoy* Dkt. No. 267.)

15          Thus, it was necessary for Class Counsel to object to the *McCoy* settlement to ensure that

16   *McCoy* did not preempt the instant Class Action. (Levy Dec. ¶ 21.) Class Counsel achieved their

17   objective, to the benefit of the Class in this case.

18   **D.  Class Counsel Fully Briefed Plaintiffs' Motion for Class Certification and their**

19   **Opposition to Defendants' Motion for Summary Judgment**

20          Meanwhile, Class Counsel had turned in earnest to preparing their Motion for Class

21   Certification, which they filed on January 14, 2020 in accordance with the Court's schedule, with

22   a hearing date of Mach 19, 2020. (Dkt. No. 72.) Defendants filed opposition on February 11,

23   2020 (Dkt. No. 76), and Plaintiffs filed their reply on February 26 (Dkt. No. 77).

24

25   [1] Section 1.10 of the *McCoy* Settlement Agreement defined the "FDCPA Letter" as "*all correspondence sent to the Settlement Class Members, after October 19, 2014*, including any
26   Welcome Letter, Demand Letter, Account Statement, or any other correspondence, in an attempt to collect the purported debt." (Emphasis added.) Section 1.24 defined "Released Claims" as "any
27   and all claims under the FDCPA, RFDCPA, and FDCPA State Equivalents *based upon the FDCPA Letters, regardless of whether the claims were asserted in the Litigation*." (Emphasis
28   added.) These provisions were arguably broad enough to sweep the collection claims in this case, which are based on form letters that Veripro, a Nationstar subsidiary, sent to the Collection Letter Subclass, within the scope of the Class release in *McCoy*. (Levy Dec. ¶ 20.)

The pandemic resulted in delays in the hearing of the Motion for Class Certification and defense Motion for Summary Judgment in this case, as well as the trial schedule. (Dkt. Nos. 79, 80, 82.) As a result, the hearing of the Motion for Class Certification was ultimately set for August 13, 2020, and a briefing and hearing schedule was set for defendants' Motion for Summary Judgment. (Dkt. 83.) Defendants' Motion for Summary Judgment was refiled accordingly on May 15, 2020 (Dkt. No. 94), opposed on June 8, 2020 (Dkt. No. 100) and fully briefed on June 29, 2020 (Dkt. No. 104). Defendants also filed a *Daubert* motion in parallel with their Motion for Summary Judgment to exclude expert Evan Hendricks's testimony, which was briefed and to be heard concurrently with their Motion for Summary Judgment on August 13, 2020. (Dkt. Nos. 95, 99, 105.)

**E.** **Class Counsel Engaged in Appropriate Settlement Processes, Negotiated the Settlement, and Is Taking the Necessary Steps to Obtain Preliminary and Final Settlement Approval**

In October 2019, the parties attended a mediation before retired Alameda Superior Court Judge Hernandez at ADR Services. (Levy Dec. ¶ 24.) The mediation was held on October 25, 2019 and lasted most of the day. No settlement was reached.

While the Motion for Class Certification was pending in early 2020, in accordance with a settlement reference from the Court (Dkt. No. 75), the parties scheduled a mandatory settlement conference before Magistrate Judge Ryu. (Levy Dec. ¶ 25.) A mandatory settlement conference was initially set for May 4, 2020 and then moved to July 27 to allow the Motion for Class Certification and Motion for Summary Judgment to be fully briefed (but not heard or decided) before the settlement conference. (Dkt. Nos. 75, 93.)

Settlement progress was made at the conference, held remotely before Judge Ryu on July 27, 2021. (Levy Dec. ¶ 26; Dkt. No. 106.) The parties proposed a stipulation to continue the Motion for Class Certification and Motion for Summary Judgment hearing dates. (Dkt. No. 107.) In response, the Court issued an Order staying the case and vacating all deadlines and hearings. (Dkt. No. 108.) The parties then continued settlement discussions and negotiations, which led to a further remote settlement conference with Judge Ryu on August 25-26, 2020, at which a

1    settlement in principle was reached. (Dkt. No. 111.)

2        The parties then engaged in lengthy and intensive negotiation and drafting of the

3    Settlement Agreement and the associated Class Notice and Claim form for this settlement. (Levy

4    Dec. ¶ 27.) Class Counsel obtained estimates from four settlement administrators. (*Id.*) The

5    settlement documentation was not completed until early 2021, shortly before Plaintiffs filed their

6    Motion for Preliminary Approval. (Dkt. No. 117.) On April 15, 2021, the Court held a hearing on

7    the motion, at which Court required certain changes to the settlement and further explanations

8    from the parties. (Dkt. No. 120.) On May 17, 2020, the parties submitted a Joint Statement in

9    response to the Court's April 15 Order. (Dkt. No. 121.) The Court approved the parties' proposed

10   changes on October 20, 2021 (Dkt. No. 123) and issued its Preliminary Approval Order on

11   October 29 (Dkt. No. 125), setting December 1, 2021 as the deadline for filing this motion. The

12   parties then stipulated, and the Court ordered, that the deadline for this motion be extended to

13   December 10, 2021. (Dkt. No. 127.)

14   ### III. REQUEST FOR AWARDS OF ATTORNEY'S FEES BASED ON THE

15   ### LODESTAR METHOD AND EXPENSES

16       The lodestar method "is appropriate in class actions brought under fee-shifting statutes

17   (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief

18   sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but

19   where the legislature has authorized the award of fees to ensure compensation for counsel

20   undertaking socially beneficial litigation." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset*

21   *Prods. Liab. Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011) [hereinafter cited as "*Bluetooth*"], citing

22   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

23       Here, Plaintiffs' claims arise under the Rosenthal Fair Debt Collection Practices Act, Cal.

24   Civ. Code §§ 1788 *et seq*. (the "Rosenthal Act"), the CCRAA, Cal. Civ. Code §§ 1785 *et seq*.,

25   and the UCL. Each of these consumer protection statutes allows for fee-shifting. The Rosenthal

26   Act incorporates many provisions of the FDCPA, including its civil remedies provision, 15

27   U.S.C. § 1692k(a)(3), which provides for a mandatory fee award "in the case of any successful

28   action to enforce the foregoing liability, the costs of the action, together with a reasonable

1   attorney's fee as determined by the court." Cal. Civ. Code. § 1788.17 (incorporating § 1692k by

2   reference in the Rosenthal Act).

3          Likewise, the CCRAA mandates a fee award for a successful plaintiff. Cal. Civ. Code, §

4   1785.31(d), (f).

5          And while there is no comparable provision in the UCL, fees are routinely awarded in

6   UCL cases under California Code of Civil Procedure § 1021.5, which authorizes private attorney

7   general fees in actions that "result[] in the enforcement of an important right affecting the public

8   interest …."

9          Under a fee-shifting statute, the court "must calculate awards for attorneys' fees using the

10  'lodestar' method," *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001),

11  which involves 'multiplying the number of hours the prevailing party reasonably expended on the

12  litigation by a reasonably hourly rate,' *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.

13  1996) and, 'if circumstances warrant, adjust[ing] the lodestar to account for other factors which

14  are not subsumed within it,' *Ferland*, 244 F.3d at 1149 n.4; *see also Caudle v. Bristow Optical*

15  *Co.*, 224 F.3d 1014, 1029 (9th Cir. 2000)." *Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir.

16  2003).

17         The reasonable hourly rate is determined by considering the "experience, skill, and

18  reputation of the attorney requesting fees." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d

19  895, 908 (9th Cir. 1995). Here, in addition to their professional qualifications, Class Counsel have

20  submitted evidence of fee awards in prior cases in support of the reasonableness of their rates.

21  (Levy Dec. ¶¶ 37, 38; Kemnitzer Dec. ¶¶ 24-34.) Rate determinations from other cases are

22  satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge*

23  *Corp.*, 896 F. 2d 403, 407 (9th Cir. 1990).

24          Counsel's services and expenses are detailed in the supporting declarations (Levy Dec. ¶¶

25  28-36; 48-49; Kemnitzer Dec. ¶¶ 5-6) and summarized in the following table:

26  //

27  //

28  //

| Table 1—Class Counsel's Lodestar and Expenses | | | |
|---|---|---|---|
| Firm | Fee Lodestar | Expenses | Total |
| Arthur Levy | $472,430.00 | $19,831.25 | $492,261.25 |
| Kemnitzer Barron & Krieg | $439,525.00 | $17,762.34 | $457,287.34 |
| HERA | $64,250.00 | $3,460.36 | $67,710.36 |
| Total | $976,205.00 | $41,053.95 | $1,017,258.95 |

As noted above, the case is now in an advanced stage of preparation; discovery is complete, class certification and dispositive motions have been fully briefed. The case stands ready for pretrial and trial upon notice to the Class.

Under the Settlement, defendants have agreed to pay Class Counsel's fees and expenses, as awarded by the Court, in an amount not exceeding $390,000. (Settlement Agreement § 4.6(a)). Class Counsel request a fee award equal to the maximum allowed under the Settlement Agreement, $390,000, less their expenses of $41,053.95, for a net fee award of $348,946.05, which reflects 35.8%, of their lodestars:

| Table 2—Allocation of Fees Among Class Counsel Firms | | | | |
|---|---|---|---|---|
| Firm | Fee Lodestar | % of Total Lodestar | Requested Fee Award | % of Firm Lodestar |
| Arthur Levy | $472,430.00 | 48.4% | $168,957.40 | 35.8% |
| Kemnitzer Barron & Krieg, LLP | $439,525.00 | 45.0% | $157,010.61 | 35.8% |
| HERA | $64,250.00 | 6.6% | $22,978.04 | 35.8% |
| Total Lodestar | $975,205.00 | 100.0% | $348,946.05 | 35.8% |

## A. **Application of the _Kerr_ factors**

Time and Labor Required. Class Counsel were obligated to vet defendants' data-keeping practices to determine whether it was feasible to identify Class members from defendants' data, or self-identification would be required. Data discovery ensured that all eligible Class members would be included in the Settlement and able to receive the benefits of the Settlement.

As explained above, obtaining the data was a lengthy and arduous process. Enforcing Plaintiffs' data discovery requests required Class Counsel to submit three discovery dispute letters to the Court and resulting judicial conferences. Each time, the Court ruled that Class Counsel was entitled to the data discovery it was seeking.

Plaintiffs could not settle this case and seek this Court's approval without taking discovery

1  into class identification data issues and the merits. That required analyzing defendants'

2  documents and data and traveling to Dallas to take the PMK depositions. Taking these

3  depositions was not only indispensable due diligence, but also crucial to enabling Plaintiffs to file

4  for class certification and to oppose defendants' Motion for Summary Judgment. Without timely

5  class certification and summary judgment opposition filings, Class members would not have

6  received anything in settlement. The Settlement benefits thus reflect the large investment of time

7  and expenses Class Counsel invested in the case.

8       Because of the limitations in defendants' data, it became necessary for Class Counsel to

9  adopt a self-identification approach to class certification. (Dkt. No. 72, at pp. 22-23, citing

10 *Herrera v. LCS Financial Services Corp.*, 274 F.R.D. 666, 673-76 (N. D. Cal. 2011).) This

11 alternative approach required legal research, creativity, and perseverance in the face of staunch

12 defense opposition to certification.

13      In addition, Class Counsel filed timely objections to the *McCoy* settlement, which could

14 have preempted this class action. As a result of Class Counsel's efforts, this case was carved out

15 of the *McCoy* settlement, enabling some Class members in this case to obtain money benefits in

16 both cases and, more importantly, credit reporting relief that was unavailable to the *McCoy* class

17 members under that settlement.[2]

18      <u>Novelty and Difficulty of the Issues Involved; Requisite Legal Skill</u>. This was a novel,

19 difficult, and challenging case, especially from a credit reporting standpoint. There is no

20 published appellate case law on the accuracy of reporting deficiencies after foreclosures and short

21 sales under California law.[3] There is an apparent split of California federal District Court

22 opinions on the subject, some holding that reporting a balance and delinquency after a foreclosure

23

24

25

26

27 [2] The Court in *McCoy* had granted summary judgment against the plaintiff on his CCRAA claims, holding that he had not suffered any damage as a result of the alleged violations. (*McCoy* Dkt. No. 149, pp. 7-9.) This left no class credit reporting claims to settle in *McCoy*.

28 [3] The Ninth Circuit issued an *unpublished* opinion strongly supporting the credit reporting claims in this case. *Kuns v. Ocwen Loan Servicing, Ltd. Liab. Co.*, 611 F. App'x 398, 399 (9th Cir. 2015).

1   or short sale on a purchase money consumer loan is inaccurate,[4] others suggesting that reporting

2   the full deficiency balance is not inaccurate because California's purchase money anti-deficiency

3   stature does not entirely eliminate the debt, only the borrower's personal liability to pay it.[5] Cal.

4   Civ. Code § 580b(c), (d). In short, Class Counsel faced significant risk on the credit reporting

5   issues, most notably from the July 2019 decision of this Court denying credit reporting relief

6   based on California anti-deficiency laws, which was affirmed on appeal by the Ninth Circuit.

7   *Gray v. Ocwen Mortg. Servicing, Inc.*, No. 18-cv-01864-JD, 2019 U.S. Dist. LEXIS 121004, at

8   *7 (N.D. Cal. July 19, 2019), *affirmed* in *Gray v. Ocwen Mortg. Servicing, Inc.*, 840 Fed. App'x

9   185 (9th Cir. 2021).[6]

10          In addition, Plaintiffs faced challenges under the CCRAA as interpreted by one California

11   intermediate appellate panel. In *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th

12   628, 638, the court ruled that the plaintiff had to prove actual damage in order to recover punitive

13   damages under the CCRAA, Cal. Civ. Code § 1785.31(a)(2)(B). Plaintiffs vigorously contested

14   that *Trujillo* barred recovery under the facts of this case and reliably construed the statute, and

15   requested that this Court correctly construe the statute, contrary to *Trujillo*. (Dkt. No.72, pp. 20-

16   21; No. 72, pp. 2-5.) Defendants took the opposite view (Dkt. No.76, pp. 10-11), with the parties

17   presenting the Court with a novel issue of the interpretation of California's credit reporting

18   punitive damages statute.

19          <u>The Preclusion of Other Employment</u>. This factor is not applicable.

20          <u>The Customary Fee</u>. Here, Class Counsel are not seeking *any* multiplier—asking instead

21

22   [4] *Johnson v. Wells Fargo Home Mortg., Inc*., No. EDCV 13-01044-VAP (OPx), 2013 U.S. Dist.
     LEXIS 185345, at *23 (C.D. Cal. Sep. 13, 2013); *Murphy v. Ocwen Loan Servicing, LLC*, No.
23   2:13-cv-555-TLN-EFB, 2014 U.S. Dist. LEXIS 86640, at *22 (E.D. Cal. June 20, 2014)
     (following Johnson; *Abdelfattah v. Carrington Mortg. Servs.* LLC, No. C-12-04656-RMW, 2013
24   U.S. Dist. LEXIS 17517, at *9 (N.D. Cal. Feb. 7, 2013).
     [5] *Prianto v. Experian Info. Sols., Inc.*, No. 13-cv-03461-TEH, 2014 U.S. Dist. LEXIS 94673, at
25   *22 (N.D. Cal. July 10, 2014); *Herrera v. LCS Fin. Servs. Corp.*, No. C09-02843 TEH, 2009 U.S.
     Dist. LEXIS 81850, at *22 (N.D. Cal. Sep. 9, 2009).
26   [6] *Gray* significantly differs from this case because it involved credit reporting prior to any
     foreclosure or short sale. The anti-deficiency statute, § 580b(a)(3), applies only to loan balances
27   *after* a sale or other exhaustion of the remedies. *Gray*, 840 F. App'x at 186 (9th Cir. 2021)
     ("neither Richard Gray's bankruptcy discharge nor section 580b of the California Code of Civil
28   Procedure affected Kimberly Gray's responsibility to make the loan payments before a
     foreclosure of the property"). Here the Class is defined to require that there has been a foreclosure
     or short sale.

for only a third of their lodestar. In light of the investment made and risks faced by Class Counsel in the case. Plaintiffs' fee request is reasonable.

The Contingent Nature of the Fee. Class Counsel undertook this class action on a purely contingent basis, with no assurance of recovering fees or litigation costs. (Levy Dec. ¶ 36; Kemnitzer Dec. ¶ 35.) Despite this lack of assurance, Class Counsel expended significant time and resources to prosecute the case on behalf of the Class.

The Results Obtained. After conducting the necessary discovery and diligence, Class Counsel determined that the potential size of this case is significantly larger than defendants initially proposed to Class Counsel and the Court. (Levy Dec. ¶ 16.) Counsel was unable to make that determination without pursuing the data discovery to successful outcome, which as explained above was a contested and protracted process that ultimately required a sit-down session with both sides' counsel in the Court's jury room.

Plaintiff negotiated for the best statutory damages award possible in light of the size of the Collection Letter Class, numbering in the low to mid hundreds. However, due to size of the case and potential issues due to Veripro's very low net worth, it was not feasible or likely to obtain anywhere close to the maximum $500,000 in statutory damages allowed under California's Rosenthal Fair Debt Collection § 1788.17, the state analog to the FDCPA. 15 U.S.C. § 1692k(a)(2)(B), (b); *see* Motion for Preliminary Approval (Dkt. No. 117) at pp. 14-15.) Counsel therefore negotiated for permanent credit reporting relief for as large a Credit Reporting Subclass as possible, which they obtained under the Settlement notwithstanding the legal challenges to credit reporting relief described above. (Dkt. No. 117, at 15:14-20.)

The credit reporting relief will enable borrowers to significantly improve their credit reports and credit scores by eliminating a large delinquent balance and derogatory delinquent status from their reports, enabling many to improve their credit and open the way for new credit opportunities for the beneficiaries of this settlement.

The Attorneys' Experience, Reputation, and Ability. Class Counsel have successfully prosecuted many complex consumer class actions. (Levy Dec. ¶¶ 2-9; Kemnitzer Dec. ¶ 22.) Class Counsel's reputation and skill in developing evidence supporting liability, damages, and the

1   propriety of class certification were key to reaching the Settlement benefitting the Class.

2          In light of the quality of the representation provided by Class Counsel, the outstanding

3   benefit to the Class obtained in the Settlement, the complexity of the case, and the risk of

4   nonpayment, a $348,946.05 fee—that is, 1/3 of Class Counsels' lodestar—is reasonable.

5   **B.  Application of the *Bluetooth* Factors**

6          Under *Bluetooth*, the Court is required to evaluate the reasonableness of the attorney's fee

7   award for indicia of collusion, namely:

8          (1)     when counsel receive a disproportionate distribution of the settlement, or when the

9                  class receives no monetary distribution but class counsel are amply rewarded;

10         (2)     when the parties negotiate a "clear sailing" arrangement providing for the payment

11                 of attorneys' fees separate and apart from class funds; and

12         (3)     when the parties arrange for fees not awarded to revert to defendants rather than be

13                 added to the class fund.

14  *Bluetooth,* 654 F.3d at 947.

15         Here, there is no reversion of fees to the defendants or "clear sailing" agreement.

16  (Settlement Agreement § 4.6.) In the settlement conference before Judge Ryu, there were no fee

17  negotiations until the parties had reached an agreement in principle on the terms of the Class

18  settlement. (Levy Dec. ¶ 26.)

19         Addressing *Bluetooth* factor (1), this is not a case where plaintiffs' counsel failed to

20  identify the issues, dogged the case, cared little and did even less for the Class, and simply

21  presented an unexamined, undiscounted lodestar claim at the end. To the contrary, the record is

22  clear that Class Counsel acted conscientiously throughout, vigorously pursuing and defending the

23  interests of the Class. These efforts produced the Settlement, under which the Class is receiving

24  significant benefits, including automatic restitution all amounts collected as a result of the

25  collection letters (Settlement Agreement § 4.1(a)); statutory damages of $150 to every member of

26  the Collection Letter Subclass (§ 4.1(b)); and credit reporting relief to all Class members (§ 4.3),

27  even though such relief was in vigorous dispute under state and federal credit reporting laws. *See*

28  pp. 10-12, above.

1    The proposed Settlement is the result of Class Counsel's thorough factual investigation

2  and litigation of novel legal issues. Class Counsel well represented the Class by pursuing and

3  analyzing data discovery to determine whether the Class could be identified without the need for

4  self-identification. They vetted defendants' claim that there were at most only 300 potential class

5  members, showing that there were potentially at least twice that number. Class Counsel took

6  extensive discovery, presented an expert case, filed the Motion for Class Certification and

7  opposed defendants' Motion for Summary Judgment.

8    Class Counsel negotiated the best settlement available for the Class, and has

9  acknowledged the limited success of the litigation by accepting a 2/3 cut in their lodestar fees.

10  There was no collusion here. The reduced fees requested brings the fees into alignment with the

11  result for the Class. Class Counsel respectfully requests that the Class Counsel be awarded fees as

12  requested in Table 2 above.

13   **C.   Class Counsel Also Request an Award of $41,000 in Expenses Incurred in**

14        **Prosecuting this Litigation and Securing the Settlement for the Class**

15    Plaintiffs respectfully request reimbursement of $41,053.95 in expenses incurred by Class

16  Counsel. These are detailed in the supporting declarations and consist primarily of expert fees,

17  deposition transcript expenses, travel expenses for the Dallas depositions and the *McCoy* hearing

18  in San Diego, and production costs such as photocopying. (Levy Dec. ¶ 40, 50; Kemnitzer Dec. ¶

19  5.)

20   **IV. CLASS REPRESENTATIVES REQUEST SERVICE AWARDS OF $5,000 EACH**

21    Plaintiffs have devoted their time for the benefit of other Class members, notwithstanding

22  the small amounts they stood to recover personally. (Toland Dec. ¶¶ 8-10, Washington Dec. ¶¶ 8-

23  10.) Throughout the case, they both kept themselves apprised of the case's progress, regularly

24  asking questions, diligently reviewing the filings and discovery Class Counsel sent to them and

25  promptly responding to Class Counsels' requests. Georgia Toland attending the Mandatory

26  Settlement Conferences before Judge Ryu. They responded to defendants' extensive requests for

27  admission, interrogatories, and document requests, and were both deposed by defendants.

28    The Settlement Agreement provides for service awards of up to $5,000 to each to

1  Plaintiffs, as the Court may approve. (Settlement Agreement § 4.5.) Service awards are "intended

2  to compensate class representatives for work done on behalf of the class, to make up for financial

3  or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

4  willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

5  958-59 (9th Cir. 2009). Courts have discretion to approve service awards based on, *inter alia*, the

6  amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack

7  thereof) as a result of the litigation. *See In re Animation Workers Antitrust Litig.*, 2016 WL

8  6663005, at *9 (N.D. Cal. Nov. 11, 2016) (citations omitted). In the Ninth Circuit, a service

9  award of $5,000 is presumptively reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

10  463 (9th Cir. 2000), *as amended* (June 19, 2000); *Covillo v. Specialtys Cafe*, 2014 WL 954516, at

11  *8 (N.D. Cal. Mar. 6, 2014) ("a $5,000 incentive award is presumptively reasonable").

12  ## V.  CONCLUSION

13  Plaintiffs and their Class Counsel respectfully request that the Court grant their request for

14  $348,946.05 in attorneys' fees and $41,053.95 in litigation, as requested and allocated above, and

15  service awards to each Plaintiff in the maximum amount, $5,000.

16  Dated:  December 9, 2021                    HOUSING & ECONOMIC RIGHTS ADVOCATES

17                                             KEMNITZER, BARRON & KRIEG, LLP

18

19                              By:    /s/ *Kristin Kemnitzer*
                                       ARTHUR D. LEVY
20                                     KRISTIN KEMNITZER
                                       Attorneys for Plaintiffs TAQUELIA
21                                     WASHINGTON TOLAND AND GEORGIA
                                       TOLAND

22

23

24

25

26

27

28