HOUSING AND ECONOMIC RIGHTS ADVOCATES
ARTHUR D. LEVY          Bar No. 095659
GINA DI GIUSTO          Bar No. 293252
P.O. Box 29435
Oakland, CA 94604
Telephone: (415) 702-4551
Facsimile: (415) 814-4080
arthur@yesquire.com
gdigiusto@heraca.org

KEMNITZER, BARRON & KRIEG, LLP
BRYAN KEMNITZER       Bar No. 066401
KRISTIN KEMNITZER     Bar No. 278946
42 Miller Ave., 3rd Floor
Mill Valley, CA 94941
Telephone: (415) 632-1900
Facsimile: (415) 632-1900
bryan@kbklegal.com
kristin@kbklegal.com

Attorneys for Plaintiffs TAQUELIA WASHINGTON TOLAND AND GEORGIA TOLAND Individually and on Behalf of All Others Similarly Situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAQUELIA WASHINGTON TOLAND and GEORGIA TOLAND, individually and on behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; VERIPRO SOLUTIONS INC., a Delaware corporation, and DOES 1 through 20, <br><br> Defendants. | Case No. 3:17-cv-02575-JD <br><br> CLASS ACTION <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** <br><br> **Date: April 21, 2022** <br> **Time: 10:00 a.m.** <br> **Courtroom 11, 19th Floor** <br> **Hon. James Donato** <br><br> Complaint Filed: March 24, 2017 |

# TABLE OF CONTENTS

| | |
|---|---:|
| **NOTICE OF MOTION** | 1 |
| **MEMORANDUM OF POINTS & AUTHORITIES** | 1 |
| I.    INTRODUCTION | 1 |
| II.    SETTLEMENT APPROVAL HISTORY AND COMPLIANCE | 2 |
| III.    TERMS OF THE PROPOSED SETTLEMENT | 4 |
| IV.    ARGUMENT | 7 |
| V.    ALL REQUIREMENTS OF PRELIMINARY APPROVAL HAVE BEEN COMPLETED | 11 |
|     A. The Court-Ordered Notice Comports with Due Process | 11 |
|     B. Plaintiffs Timely Filed Their Motion for Award of Attorneys' Fees, Costs, and Expenses and Service Award | 13 |
|     C. The Parties Request That the Court Approve the National Housing Law Project as the *Cy Pres* Recipient | 13 |
| VI.    CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**STATUTES**

| | |
|---|---:|
| 15 U.S.C. § 1681c(a)(4) | 8 |
| Federal Rule of Civil Procedure 23 | 7,12 |
| Federal Rule of Civil Procedure 23(c)(2)(B) | 11 |
| Federal Rule of Civil Procedure 23(e) | 2,10 |
| Federal Rule of Civil Procedure 23(e)(2) | 8 |

**CASES**

| | |
|---|---:|
| *Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532 (N.D. Cal. Jan 28, 2016) | 7 |
| *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) | 12 |
| *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) | 9,11 |
| *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) | 13 |
| *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) | 11 |
| *G. F. v. Contra Costa Cty.*, 2015 WL 4606078 (N.D. Cal. July 30, 2015) | 11 |

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 9

*In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ..................... 10

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..................... 13

*Lane v. Facebook, Inc.* 696 F.3d 811 (9th Cir. 2012) ...................................................... 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................... 7

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977 ..................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..... 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ............................................................................................................ 7

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................... 9

*Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035 (9th Cir. 2019) ....................... 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................ 8

## NOTICE OF MOTION

Please take notice that on April 21, 2022 at 10:00 a.m., or as soon thereafter as the matter can be heard, Plaintiffs will and do hereby move this Court for Final Approval of the Settlement Agreement and Release in this action ("SAR," attached as Exhibit A to the supporting Declaration of Kristin Kemnitzer), including certification of the Settlement Class, along with a Final Approval Order substantially as proposed as SAR Exhibit 3 and attached hereto. The motion will be based on this notice and motion, the accompanying Memorandum, Declarations and Exhibits, the files and records in this action, the Motion for Attorneys' Fees and Costs and accompanying documents, and such further evidence and argument as may be presented at the hearing.

The proposed Settlement Class is defined as follows:

All natural persons who obtained a second mortgage, or home equity line of credit, secured by a deed of trust on property located in California

    (a)    to secure payment of the purchase price of a dwelling

    (b)    for not more than four families and which

    (c)    was occupied entirely or in part by the purchaser, and, after a foreclosure or short sale of the dwelling, any of the defendants

        (1)    sent the person a letter in the form of Exhibits "A" and/or "C" to the Complaint within the Class Period ("the Collection Letter Subclass"); and/or

        (2)    reported such person's second mortgage loan or home equity line of credit to one or more of the credit reporting agencies Experian, Equifax, or TransUnion as having an outstanding balance owing and/or otherwise as currently delinquent within the Class Period ("the Credit Reporting Subclass").

## MEMORANDUM OF POINTS & AUTHORITIES

**I.  INTRODUCTION**

On October 29, 2021, the Court granted preliminary approval of the proposed Settlement. (Dkt. No. 125.) Pursuant to the Preliminary Approval Order, the Settlement Administrator, JND Legal Administration, timely mailed settlement notices to 5,611 Class Members.

1  Plaintiffs Georgia Toland and Taquelia Washington Toland ("Plaintiffs") now move for
2 Final Approval of Class Action Settlement pursuant to Rule 23(e) of the Federal Rules of Civil
3 Procedure on behalf of the Settlement Class. For the reasons stated in Plaintiffs' Preliminary
4 Approval Motion, the Court should grant final approval of the proposed settlement. (Dkt. No.
5 117, pp. 11-17.)

6  The response of the Class amply supports final approval. There are no objections and only
7 three Class members have opted out. 485 Class members submitted claims for credit reporting
8 relief, in addition to the 377 Collection Letter Subclass members, who will automatically receive
9 credit reporting relief and a per capita statutory damages payment, for a total of 862, or 15.4% of
10 the noticed Class.

11  Plaintiffs' counsel actively litigated the case for nearly four years, though class
12 certification and summary judgment motions, which were pending at the time the settlement was
13 reached with Magistrate Judge Ryu in August 2020 and remain pending. Plaintiffs' counsel have
14 exerted best efforts to support the claims rate by providing direct, live telephone support, in
15 addition to the Settlement Administrator's automated toll-free line and the settlement website; an
16 online claim form; and a postcard mailing on January 19, 2022, well in advance of the March 10,
17 2022 claim deadline, reminding class members of the need to submit claims.

18  The settlement reflects the best result counsel could achieve for the Class under all the
19 circumstances of the case and should be approved.

20 **II.    SETTLEMENT APPROVAL HISTORY AND COMPLIANCE**

21  The Court is familiar with the background and claims in this litigation, which will not be
22 repeated here. Plaintiffs provided the Court with a history of the litigation and an analysis of the
23 claims in their Motion for Preliminary Approval. (Dkt. No. 117, at 2-4, 14-17.) Additional detail
24 was provided in Plaintiffs' Counsel's Motion for Award of Attorney's Fees, Costs and Expenses,
25 and Service Awards, filed on December 9, 2021, the day before class notice was mailed. (Dkt.
26 No. 128, at pp. 2-7.)

27  The Settlement was reached in principle in a multi-session settlement conference before
28

1   Magistrate Judge Ryu in July and August 2020. After the settlement documentation was
2   completed, Plaintiffs filed their Motion for Preliminary Approval, on February 5, 2021. (Dkt. No.
3   117.)

4   On April 15, 2021, the Court held a hearing on the motion, at which Court required
5   modest changes to the settlement and further explanations from the parties. (Dkt. No. 120.) On
6   May 17, 2021, the parties submitted a Joint Statement in response to the Court's April 15 Order.
7   (Dkt. No. 121.) The Court approved the parties' proposed changes on October 20, 2021 (Dkt. No.
8   123), and issued its Preliminary Approval Order on October 29 (Dkt. No. 125), setting December
9   1, 2021 as the deadline for mailing Class notice and Plaintiffs' Counsel's fee motion. The parties
10  then stipulated, and the Court ordered, that the deadline for mailing class notice and filing the fee
11  motion be extended to December 10, 2021, moving the notice response date back to March 10,
12  2022, allowing a three-month claims period. (Dkt. No. 127.)

13  In compliance with the Court' schedule, the Settlement Administrator mailed the Class
14  Notice and the Claim Form to the 5,611 Class members on December 10, 2021. (Keough Decl., ¶
15  9.) On the same date, the Administrator activated the informational website for Class members,
16  https://www.tolandnationstarsettlement.com, and the toll-free automated information telephone
17  line, (833) 667-1229. (*Id.*, ¶¶ 13-16.)

18  The settlement website includes an online claim form, at Plaintiffs' counsel's expense,
19  https://secure.tolandnationstarsettlement.com. (Keough Decl., ¶ 15; Dkt. No. 125, ¶ 11.)

20  One day earlier, on December 9, Plaintiffs' counsel filed their Motion for Award of
21  Attorneys' Fees, Costs and Expenses, and Service Awards. (Dkt. No. 128.) The motion, and all
22  supporting papers, were posted on the settlement website,
23  https://www.tolandnationstarsettlement.com/documents. (Keough Decl., ¶ 15.) There have been
24  no objections to the proposed fee award. (*Id.*, ¶ 26.)

25  On January 19, 2022, at Plaintiffs' Counsel's expense (Dkt. 125, ¶ 11), the Administrator
26  mailed a postcard to all Credit Reporting Class members who had not submitted a claim form,
27  reminding them of the need to file a claim and of the March 10 claim deadline. (Keough Decl., ¶
28

11 & Exh. "C".)

647 unique users visited the settlement website, with 3,269 page views. (Keough Decl., ¶ 16.) 138 callers contacted the Administrator's toll-free information line. (*Id*., ¶ 14.) In addition, 41 Class members contacted Plaintiffs' Counsel with questions by email or telephone. (Levy Decl., ¶ 4.) All calls to counsel were promptly returned. (*Id*., ¶ 5.)

Of the 5,611 mailed notices, 1,424 were returned undeliverable. (Keough Decl., ¶¶ 9, 10.) The Administrator remailed 957 of the returned notices after conducting enhanced address searches, yielding a total of 5,144 notices delivered, 92% of the initial mailing. (*Id*. ¶ 10.)

The Administrator received a total of 485 claims, including 239 online. (Keough Decl., ¶ 18.) An additional 377 Collection Letter Subclass members automatically qualify for credit reporting relief, without any claim requirement. (SAR § 2.2(c).) Adding those 377 credit reporting claims to the 485 claims received by the Administrator yields a total of 862 Class members with credit reporting relief claims. This reflects an overall claims rate of 15.4% of the total mailed claims (5,611), and 16.9% of the total notices delivered (5,144). Excluding the 377 Collection Letter Subclass member claims, the respective statistics are 8.6% and 9.4%. These response rates comport with the estimates of 8-16% Plaintiffs' Counsel provided the Court in seeking preliminary settlement approval. (Dkt. No. 117-1, ¶44; Dkt. No. 117-2, ¶13.)

## III. TERMS OF THE PROPOSED SETTLEMENT

The following summarizes the key elements of the SAR:

**Class Definition**: The class definition in the SAR remains identical to the class definition in the Complaint. (SAR ¶ 1.6.) The SAR provides for two Subclasses, a Collection Letter Subclass and a Credit Reporting Subclass, which correspond to subparts (1) and (2) of the Class definition. (*Id*.)

**Identification of the Collection Letter Subclass**: Defendants reviewed each of the 677 loans that are potentially members of the Collection Letter Subclass and identify Collection Letter Subclass Members by the process explained in SAR ¶ 2.1.

**Identification of the Credit Reporting Subclass Class**: Defendants identified the

universe of Credit Reporting Subclass members by the process explained in SAR ¶ 2.2 and thereafter the Settlement Administrator mailed 5,611 Class Notices on December 10, 2021. (Keough Decl., ¶ 9.)

**Class Notice**: The Settlement Administrator sent Class Notice by first class mail to all Class Members. (SAR ¶ 6.3). The Notice and Claim Form were updated following the Court's guidance at the April 15, 2021 Preliminary Approval Hearing and the October 29, 2021 Preliminary Approval Order (Dkt. No. 125). The SAR lays out address update procedures for returned Class Notices. (SAR ¶ 6.3) that the Settlement Administrator followed. (Keough Decl., ¶¶ 8, 10.) The Settlement Administrator maintained a settlement website and toll-free phone number for Class Members to provide information about the Settlement. (SAR ¶¶ 1.31, 5.1, 6.4, 6.5.) Furthermore, the Order Granting Preliminary Approval ordered a reminder postcard to be mailed to all Credit Reporting Subclass Members forty (40) days after the initial Class Notice mailing. (Dkt. No. 125, ¶ 9.)

**Claim Form for Credit Reporting Subclass**: All Members of the Collection Letter Subclass whose loans were previously serviced by Nationstar will be deemed Credit Reporting Subclass Members and will be entitled to the credit reporting relief without submitting a Claim Form.(SAR ¶ 2.2(c).) Other Members of the Credit reporting Subclass will be entitled to credit reporting relief if they submit a simple, one-page Claim Form. (SAR Article VII.) The proposed Class Notice and Claim Form were modified pursuant to the Court's order on October 29, 2021 (Dkt. No. 125) and mailed accordingly on December 10, 2021.

**Opt-Outs**: Class Members could opt out of the settlement the Class Notice provided instructions for doing so. (SAR ¶ 8.1; Keogh Decl., Ex. "B" at p. 5 (FAQ No. 5).) Only three Class Members opted out. (Keough Decl., ¶ 23.)

**Objections**: The Class Notice gave instructions on what a Class Member needed to do to object, and the deadline in which to do so. (SAR ¶ 8.2 ; Keough Decl., Ex. "B" at pp. 5-6 (FAQ No. 6).) No Class Members objected to the settlement or Plaintiffs' Counsel's requests for attorneys' fees, costs and expenses, or Plaintiffs' service awards. (Keough Decl., ¶ 26.)

**Restitution of Payments Collected:** Defendants shall determine for each Collection Letter Subclass Member whether and what amount was paid to Veripro after the Collection Letter was sent. Defendants shall refund 100% of all amounts paid. (SAR ¶ 4.1(a).)

**Statutory Damages Payment Entitlement:** In addition to restitution payments, Defendants shall pay each Collection Letter Subclass member $150 in statutory damages. Each co-borrower shall be entitled to a separate statutory payment. (SAR ¶ 4.1(b).)

**Credit Repair for Credit Reporting Subclass**: For all members of the Collection Letter Subclass and eligible Credit Reporting Subclass members whose Nationstar loan was last reported as a charge off, delinquent, and/or with an outstanding current balance and/or current amount past due, Nationstar will request the Credit Reporting Agencies to report such loans with a current outstanding loan balance and current amount past due of zero dollars. (SAR ¶ 4.3.)

**Cessation of Collection Attempts:** Defendants shall take all efforts to cease all collection attempts on the subject loans of all Class Members. (SAR ¶ 4.2.)

**CAFA Notice**: Defendants provided timely CAFA notice. (SAR ¶ 3.4; Keough Decl., ¶¶ 4, 5.)

*Cy Pres***:** Subject to the Court's approval, the residue of uncashed checks shall be distributed to the non-profit National Housing Law Project. (SAR ¶ 9.4.) There is no reversion to Defendants.

**Class Counsel's Fees and Expenses**: Class Counsel have sought attorneys' fees and costs in an amount set by the Court, but not to exceed $390,000, which reflects 38.5% of Class Counsel's actual lodestar. (SAR ¶ 4.6(a); Motion for Award of Attorneys' Fees, Costs, and Expenses and Service Award (Dkt. No. 128), to be heard concurrently with this Motion.)

**Service Awards to Class Representatives:** Class Representatives have requested service awards in an amount set by the Court, but not to exceed $5,000 each in recognition of the benefits conferred on the Settlement Class and their efforts in achieving the settlement. (SAR ¶ 4.5; Dkt. No. 128.)

**Class-wide Release**: The SAR narrowly tailors the release of class claims to the claims in the complaint. Specifically, Settlement Class Members release all claims "arising out of or relating to any of the Collection Letters and/or credit reporting of the loans after a short sale or foreclosure that were or could have been asserted by the Class Representative or Class Members in the Action." (SAR ¶ 10.1.)

**Settlement Administration**: The Court approved JND Legal Administration as Settlement Administrator. (SAR ¶ 1.29; Dkt. No. 125, ¶ 10.) Defendants shall pay up to a maximum of $25,000 for class administration. Class Counsel shall pay any remaining amount, including the costs of the online claim form and postcard reminder notice. (SAR ¶ 4.4; Dkt. No. 125, ¶ 11.)

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

Class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy strongly favors resolving class actions through settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's approval of settlement and certification of class). Courts should recognize that "the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotations and citation omitted). Further, "[a]pproval of a class settlement is appropriate when there are significant barriers plaintiffs must overcome in making their case." *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 01788, 2016 WL 344532, at * 4 (N.D. Cal. Jan 28, 2016) (internal citations omitted).

The Court has already granted preliminary approval of this settlement, preliminarily finding the proposed Class certifiable under Rule 23 and the settlement terms sufficiently fair to warrant the issuance of Class notice. (Dkt. No.125.) Since then, nothing has changed, except for the positive response of the Class to the settlement notice.

The Class has now responded, strongly signaling approval of the Settlement. No objections and only three opt outs were received. (Keough Decl., ¶¶ 23, 26.)

The claims rate is in line with the expectations Plaintiffs reported in their Preliminary Approval Motion. Based upon past experience, Class Counsel and JND expected the claim rate to be between 8% and 16%. (Dkt. No. 117-1, ¶44; Dkt. No. 117-2, ¶13.) In fact, the claims rate is 8.6-9.4%[1], excluding the 377 Collection Letter Class members, and roughly 15% including the Collection Letter Class members. (Keough Decl., ¶¶ 7, 18.) An 8.6-9.4% claims rate is within the typical range in a claims-made settlement. (*Id.*, ¶ 19.)

There are a number of factors that tend to lower the claims rate in this case, other than those prevalent in all claims made cases. (Levy Decl., ¶¶ 3-7.) *First*, because Nationstar's search protocol identified only *potential* Credit Reporting Class Members, some Class members could not submit a claim because they could not truthfully state that they had purchase money loans and/or foreclosures or short sales, which are requirements for Class membership. (*Id.*, ¶ 5.) *Second*, for other Class members, the Nationstar tradeline is no longer being reported on their credit reports because the mortgage in question has been aged out under the seven-year reporting limit under the Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(4). (*Id.*, ¶ 6.) *Third*, some borrowers are now deceased, and credit reporting improvement is, accordingly, no longer of any value to them. (*Id.*, ¶ 7.)

Settlement of a class action requires court approval, bestowed "only after a hearing and on finding that the [proposal] is fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In determining whether a

---

[1] The rate is 8.6% based on the total notice mailing (5,611). The rate is 9.4% based on the total notices delivered (5,144), taking account of undeliverable notices.

proposed class action settlement is "fair, reasonable, and adequate," the Court may consider some or all of the following factors:

      i.      the strength of the Plaintiffs' case;

      ii.     the risk, expense, complexity, and likely duration of further litigation;

      iii.    the risk of maintaining class action status throughout the trial;

      iv.    the amount offered in settlement;

      v.     the extent of discovery completed and the stage of the proceedings;

      vi.    the experience and views of counsel;

      vii.   the presence of a governmental participant; and

      viii.  the reaction of the class members to the proposed settlement.

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("the *Churchill* factors").

      The Court has already closely scrutinized Plaintiffs' preliminary showing that, applying the *Churchill* factors, the Settlement is fair, reasonable and adequate. (Dkt. No. 117.) The Court heard Plaintiffs' Preliminary Approval Motion on April 15, 2021, and denied approval, raising questions and ordering certain changes to the Settlement. (Dkt. No. 120.) On May 17, 2021, the parties submitted a Joint Statement addressing these issues. (Dkt. No. 121.) After considering the Joint Statement, the Court approved the parties' proposed changes on October 20, 2021 (Dkt. No. 123) and issued its Preliminary Approval Order on October 29 (Dkt. No. 125).

      Plaintiffs again submit that the *Churchill* factors support approval of the Settlement. Plaintiffs addressed each of these factors in their Preliminary Approval Motion. (Dkt. No.117, pp. 13-17.) The Court found that showing sufficient after receiving the May 17, 2021 Joint Statement to issue its Preliminary Approval Order. Those same considerations strongly support final approval of the Settlement.

      The thoroughness of litigation in this case, and the advanced stage of trial readiness, are especially significant factors supporting final settlement approval. Plaintiffs' counsel recounted the history of the litigation in detail in their Motion for Award of Attorneys' Fees, Costs and

Expenses, and Service Awards. (Dkt. No. 128, at pp. 2-7.) Plaintiffs' counsel prepared this case to the point that it would now be ready for trial. The limitations on Defendants' data and potential legal impediments render this Settlement the best settlement possible for the Class in this case. (Dkt. 117 at pp. 14-16; Dkt. 128, at pp. 9-12.) The Settlement yields a better result for the Class than proceeding to trial and avoids further expenditure of party and judicial resources.

The notice and claim response statistics reported above—and most significantly the absence of any objections and the few opt outs (3 out of 5,600 notices sent)—confirm the fairness of the Settlement. A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See, e.g.*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

In *Roes, 1-2 v. SFBSC Management, LLC*, the Ninth Circuit reiterated that where, as here, the parties have negotiated a settlement agreement before a class has been certified, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." 944 F.3d 1035, 1048-49 (9th Cir. 2019) (internal quotation marks omitted). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011).

This litigation was hard fought for nearly four years. (Dkt. 128, at pp. 2-7, 13-14.) The parties engaged in extensive discovery, six lay and expert depositions, document discovery, and discovery disputes that resulted in two informal discovery telephone conferences with the Court (Dkt. Nos. 51, 53, 54) and a Court-ordered in-person discovery meet and confer in the jury room (Dkt. Nos. 56, 58, 59).

The Settlement was reached as the result of arm's-length negotiations only after an

unsuccessful private mediation and a second and ultimately successful mandatory settlement conference before Magistrate Judge Ryu on the eve of the August 13, 2020 hearing of the class certification and summary judgment motions, which had been full briefed. (Dkt. No. 128-2, ¶¶ 25, 26; *see also* Dkt Nos. 75, 77, 93, 104, 106.) The negotiations that led to the Settlement were conducted with the aid of Judge Ryu over the course of multiple settlement conferences, confirming the Settlement's non-collusive nature. (Dkt. No. 117-1, ¶¶ 37-39.) The use of an experienced neutral mediator "confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (internal quotations omitted). All of the reasons set forth above support a finding that the Settlement is fair, adequate, and reasonable.

## V. ALL REQUIREMENTS OF PRELIMINARY APPROVAL HAVE BEEN COMPLETED

### A. The Court-Ordered Notice Comports with Due Process

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

In accordance with the notice plan set forth in the Order Granting Preliminary Approval, on December 10, 2021, the Settlement Administrator mailed 5,611 Class Notices. (Keough Decl., ¶ 9.) The Settlement Administrator also went live with a website that posted the Class Notice and other critical case-related filings, and a dedicated toll-free telephone number with a call script. (*Id.*, ¶ 15.)

Pursuant to the SAR, the Settlement Administrator followed procedures to re-mail undeliverable Class Notices that included a forwarding address. (SAR ¶ 6.3). A total of 1,424

Notices were returned undeliverable, of which 979 were remailed. (Keough Decl., ¶ 10.)

The Class Notice explained the claims in the litigation, the key terms of the Settlement, the rights and releases of claims under the Settlement, the Claim Form process, the right to object to the Settlement, the right to opt out of the Settlement, the right to appear at the final approval hearing, the expected recovery, and the contact information for Class Counsel. (Keough Decl., ¶ 9 & Exh. "B".)

Furthermore, the Parties re-worked the Class Notice and Claim Form after the Preliminary Approval Hearing on April 15, 2021 and before the Court granted preliminary approval in order to make the Class Notice and Claim Form as straightforward as possible. (Dkt. No. 121, Exh. "A".) An online claim form was also an added enhancement, at Plaintiffs' counsel's expense. (*Id.* at 7:7-17.)

Pursuant to the Order Granting Preliminary Approval, at Plaintiffs' Counsel's expense the Settlement Administrator then mailed a reminder postcard to all Credit Reporting Subclass Members forty (40) days after the initial Class Notice mailing. (Dkt. No. 125, ¶ 9; Keough Decl., ¶ 11 & Ex. "C".) The Settlement Administrator received a total of 485 claims. (Keough Decl., ¶ 18.) The Settlement Administrator also received 138 incoming calls and 647 unique users to the settlement website. (*Id.*, ¶¶ 14, 16.) In addition, Plaintiffs' Counsel fielded 41 Class member inquiries. (Levy Decl., ¶¶ 3, 4.)

Further, the 90-day deadline to object, opt out, or submit a Claim Form approved by the Court in the Preliminary Approval Order satisfies the notice requirements of Rule 23 and protects the due process rights of the Class impacted by the Settlement. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact."). The Declaration of the Settlement Administrator includes testimony about the Notice process and the absence of objectors and only one opt out. (Keough Decl., ¶¶ 9-16, 23, 26.)

//

### B. Plaintiffs Timely Filed Their Motion for Award of Attorneys' Fees, Costs, and Expenses and Service Award

The schedule set forth in the Preliminary Approval Order required Class Counsel to file their motion for attorneys' fees and Plaintiffs' service awards at the time of mailing of Class Notice. The motion and all supporting papers were filed on December 9, 2021, the day before the notice mailing. (Dkt. No. 128.) The class notice directs class members to the settlement website, where the fee motion is posted. (Keough Decl., ¶ 9 & Exh. "B" at p. 7 (FAQ 10).) This opportunity to be heard on the merits of the fee motion satisfies the concerns raised by the court in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 990 (9th Cir. 2010).

There were no objections to the fee and expense claim or the service awards. (Decl., ¶ 26.)

As the fees and service award requested in this case are in addition to and do not reduce the settlement fund payable to the Settlement Class and the fees are payable pursuant to the fee-shifting provisions of the relevant laws, the requirement that Settlement Class Members be entitled to be heard on the matter has amply been satisfied here. (Dkt. No. 128.)

### C. The Parties Request That the Court Approve the National Housing Law Project as the *Cy Pres* Recipient

The settlement carefully follows the guidelines enunciated by the Ninth Circuit for approval of *cy pres* distribution. A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). That is, the *cy pres* award must bear "a direct and substantial nexus to the interests of absent class members and thus properly provide[] for the 'next best distribution' to the class." *Lane v. Facebook, Inc.* 696 F.3d 811, 821 (9th Cir. 2012).

The Parties jointly request that the Court approve the National Housing Law Project as the *cy pres* recipient. (SAR § 9.4.) NHLP is a non-profit law and advocacy center established in 1968 and based in San Francisco, California. (Sitkin Decl., ¶ 2.) NHLP is dedicated to advancing housing justice by using the power of the law to expand and enforce low-income tenants' and homeowners' rights and increase opportunities for racial and ethnic minorities. (*Id*.) Among other

activities, NHLP provides free technical assistance, case consultations, litigation support, trainings and practice resources for legal services attorneys and other advocates representing homeowners in connection with a wide range of issues, including residential lending, abusive loan servicing, foreclosure, loss mitigation, abusive debt collection, anti-deficiency protections after a foreclosure or short sale, and credit reporting on mortgage accounts. (*Id.*) NHLP also engages in state and federal policy advocacy aimed at protecting the interests of homeowners and mortgage borrowers. (*Id.*; *see also* National Housing Law Project, available at https://www.nhlp.org/ as of Jan. 4, 2021.)

Thus, the work of the proposed *cy pres* recipient aligns closely with the mission of this impact litigation.

## VI. CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in substantial relief to Settlement Class Members, is non-collusive, and was achieved as a result of informed, extensive, and arm's-length negotiations between counsel for the respective Parties, who are experienced in consumer class action litigation. For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the Proposed Order in substantially the form of SAR Exhibit 3, attached hereto.

Dated: March 15, 2022

HOUSING & ECONOMIC RIGHTS ADVOCATES

KEMNITZER, BARRON & KRIEG, LLP

By: /s/ *Kristin Kemnitzer*
KRISTIN KEMNITZER
Attorneys for Plaintiffs TAQUELIA WASHINGTON TOLAND AND GEORGIA TOLAND